In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3577

United States of America,

Plaintiff-Appellee,

v.

James Oreye,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 434--Milton I. Shadur, Judge.

Argued January 16, 2001--Decided August 24, 2001


   Before Flaum, Chief Judge, and Posner and
Coffey, Circuit Judges.

   Posner, Circuit Judge.  Oreye was
convicted by a jury of federal drug
offenses and sentenced to 168 months in
prison. His appeal presents questions
about his Sixth Amendment right to
counsel.

   Oreye was originally indicted under the
name "Emmanual Richson," and when first
arraigned was represented by an appointed
counsel named Saltzman, to whom he denied
that he was Richson; but he could present
no evidence of this at the time and the
judge decided to let the indictment
stand. A superseding indictment charged
Oreye under both names (and others).
Insisting that he was not Richson, that
Richson was not merely an alias but a
real human being and the true author of
the crimes with which Oreye was charged,
Oreye, bypassing his lawyer, filed a
motion to dismiss the indictment, in
which he argued that the jury had
intended to indict Richson, not him. It
turned out later that there is an
Emmanual Richson who is not Oreye, but it
also turned out that Oreye uses aliases
and there is considerable doubt whether
his real name is Oreye. The judge told
him he couldn't litigate pro se while
represented by counsel. Oreye became
dissatisfied with Saltzman, doubtless be

cause the latter did not share Oreye's growing obsession with the Richson question, and so the judge appointed a substitute counsel, Shanin.

Six business days before the trial was scheduled to start, Shanin filed a motion to withdraw as Oreye's lawyer, explaining that his client was refusing to cooperate with him. The district judge promptly convened a hearing at which he explained to Oreye that Saltzman and Shanin were both able lawyers, and he blamed Oreye's dissatisfaction with them on his obsession with the Richson question. The judge decided that appointing a new lawyer for Oreye would require granting a continuance that would be prejudicial to Oreye's codefendants, who were to be tried with him (though eventually all but one pleaded guilty). Shanin was prepared to go to trial on schedule. He explained that he had filed the motion to withdraw only because Oreye and he had an irreconcilable difference of opinion over how to conduct the case--no doubt Oreye wanted to put the emphasis on his not being Richson, which, even if true, was tangential to the charges against him. The judge gave Oreye a choice between staying with Shanin, finding another law yer who would be ready to go to trial on schedule, and representing himself. The judge reminded Oreye that it would be difficult for him to represent himself, but added that if Oreye decided to go the pro se route the court would appoint Shanin as standby counsel; and the judge explained what that meant. Oreye asked the judge whether he could get a fair trial with standby counsel, and the judge said yes.

Oreye never said he wanted to proceed pro se, but a defendant can waive his right to counsel through conduct as well as words. See United States v. Irorere, 228 F.3d 816, 827-28 (7th Cir. 2000); United States v. Harris, 2 F.3d 1452, 1454-55 (7th Cir. 1993); United States v. Fazzini, 871 F.2d 635, 641-42 (7th Cir. 1989). As in Irorere, Oreye was told that if he dismissed Shanin and didn't find a substitute at his own expense, he would have to proceed pro se. See 228 F.3d at 827-28. If you're given several options, and turn down all but one, you've selected the one you didn't turn down. Granted, some cases from other circuits require evidence of misconduct to

establish waiver by conduct. E.g., United States v. Goldberg, 67 F.3d 1092, 1100-01 (3d Cir. 1995); United States v. Moore, 706 F.2d 538, 540 (5th Cir. 1983). But, with all due respect, we think these cases are wrong. The question of waiver is one of inference from the facts. As a matter both of logic and of common sense, as we have said, if a person is offered a choice between three things and says "no" to the first and the second, he's chosen the third even if he stands mute when asked whether the third is indeed his choice. This is provided the offer is clear, see Cain v. Peters, 972 F.2d 748, 750 (7th Cir. 1992), but it was here.

And having thus "decided" to go the pro se route Oreye received a bonus because Shanin was far more active at trial than the usual standby counsel. He examined and cross-examined a number of the witnesses, participated actively in the instructions conference, raised issues and objections, and even gave a closing argument--as did Oreye, so there were two closing arguments on his behalf. They even both cross-examined one of the government's witnesses. There was additional cross-examination by the codefendant's counsel and no suggestion that the codefendant was trying to pin the rap on Oreye; and so in effect this witness was cross-examined three times to the benefit of Oreye. And Oreye was acquitted on two counts. The evidence of his guilt of the other counts was overwhelming; a baker's dozen of lawyers could not have gotten him an acquittal on those counts.

He argues nevertheless that the judge denied him his Sixth Amendment right to the assistance of counsel. The judge should, he says, either have appointed a third lawyer (and if necessary postponed the trial or severed Oreye's trial from that of his codefendants) or have explained to him the downside of self-representation in greater detail. The first suggested alternative is clearly wrong. A defendant has no right to indefinite delays while he tries on new lawyers unless he has a reason for dissatisfaction with the old. United States v. Irorere, supra, 228 F.3d at 827-28; United States v. Harris, supra, 2 F.3d at 1454-55; United States v. Fazzini, supra, 871 F.2d at 641-42. Although Oreye had no good reason to be

dissatisfied with Saltzman, the judge gave him a new lawyer. He had no reason to be dissatisfied with Shanin either, and in fact they worked harmoniously together at the trial with Shanin in the standby role (in fact in a larger role, as we're about to see). Given the fact that an indigent defendant has a right to competent counsel but not a right to counsel of his choice, Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989); United States v. Messino, 181 F.3d 826, 831 (7th Cir. 1999), the judge was fully within his rights in refusing to appoint a third lawyer for Oreye.

But because the Supreme Court has held, for better or for worse, that a sane individual has a constitutional right to represent himself in a criminal proceeding, Faretta v. California, 422 U.S. 806, 819-20 (1975); United States v. Avery, 208 F.3d 597, 601 (7th Cir. 2000) (this is also a statutory right of federal criminal defendants, such as Oreye, 28 U.S.C. sec. 1654), the district judge could not just tell Oreye that he would have to go to trial with Shanin as his counsel. He had to give Oreye a choice between Shanin and self-representation. And he did so.

But was it an informed choice? Oreye complains that the judge did not adequately explain to him the downside of self-representation. Oreye is a foreigner who has been in the United States for only a few years, whose English is poor (though not so poor that he required a translator), and who has no known previous experience with the criminal justice system (though with his propensity for aliases, who can be sure?). The judge mentioned "difficulties" of self-representation but did not dilate on them. Oreye argues that by failing to explain the downside adequately, the judge prevented him from making a knowing waiver of his right to counsel and therefore took away that right.

We do not find this a persuasive syllogism. The judge did not deny Oreye the assistance of counsel. On the contrary, he tried to persuade him to stick with Shanin. His fault if there is one was not going into sufficient detail about the perils of self-representation. We're not sure it was a fault, or at

least a serious, a fatal, fault, because if he had dwelled on those perils in truly loving detail he would stand accused of having infringed Oreye's right to self-representation. The judge placed in Judge Shadur's position is on the razor's edge in assisting a defendant to make an informed choice between representation by counsel with whom the defendant is irrationally dissatisfied and self-representation. If the judge exaggerates either the advantages of being represented or the disadvantages of self-representation, he will be accused of having put his thumb on the scale and prevented the defendant from making an informed choice. United States v. Sandles, 23 F.3d 1121, 1127 (7th Cir. 1994). And therefore, as we said in United States v. Hill, 252 F.3d 919, 925, 928 (7th Cir. 2001), we "doubt that any list [of Faretta warnings] can be mandated" or that the defendant can be given "a deep understanding of how counsel could assist him. . . . All a judge can do as a practical matter--all a judge need do as a legal matter--is ensure that the defendant knows his rights and avoids hasty decisions." Cf. United States v. Goad, 44 F.3d 580, 587–89 (7th Cir. 1995); United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991). "Section 1654 and Faretta require courts to respect a litigant's demand for self-determination at the most critical moment in the criminal process. That right is not honored if judges must depict self-representation in such unremittingly scary terms that any reasonable person would refuse." United States v. Hill, supra, 252 F.3d at 928–29.

Although the warnings given by the district judge here were rather perfunctory, we think they satisfied the standard of Hill, with due regard for the razor's edge problem. The judge mentioned "difficulties" of self-representation twice during the May 17 hearing, and during the May 20 hearing pointed out to Oreye that he was unfamiliar with "trial procedures" and "legal procedures" and explained some of the complexities of those procedures to him.

But even if we were wrong about the (minimum) adequacy of the judge's explanations, we would doubt whether there had been a denial of counsel here,

because Shanin, while labeled standby counsel, was functionally counsel, period. We are mindful of the many cases which hold or imply that appointment of standby counsel does not satisfy the Sixth Amendment, if the defendant wants to be represented. E.g., United States v. Proctor, 166 F.3d 396, 406 (1st Cir. 1999); United States v. Salemo, 61 F.3d 214, 221-22 (3d Cir. 1995). But we do not submit gracefully to the tyranny of labels. If the defendant's counsel provides all the assistance required by the Sixth Amendment, the fact that he is called "standby counsel" would not violate the amendment. Cf. United States v. Morrison, 153 F.3d 34, 55 (2d Cir. 1998); United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997). Shanin played so active a role in the trial that, had Oreye not as it were shared counsel duties with him, there would be little basis for a finding of ineffective assistance of counsel. In effect, though not in name, Oreye both had counsel and represented himself. This is what is called "hybrid representation"--and is forbidden. Cain v. Peters, supra, 972 F.2d at 750. But it is not forbidden in the interest of the defendant. In part it is forbidden in the interest of the prosecution, because "it allows a defendant to address the jury, in his capacity as counsel, without being cross-examined, in his capacity as a defendant." United States v. Oakey, 853 F.2d 551, 553 (7th Cir. 1988). There are systemic concerns as well: hybrid representation complicates and prolongs a trial, to the detriment of jurors and the judicial system because there is a queue waiting for attention. So when a defendant is represented by two lawyers, and the concern expressed in Oakey is thus not a factor, the court still insists that there be only one cross-examination, one closing argument, etc. And we don't allow hybrid representation on appeal even though the time for testimony and thus for cross-examination is long over, because hybrid representation confuses and extends matters. But for present purposes the important thing is that, as the quotation from Oakey brings out, many litigants would very much like the two bites at an apple that such representation enables. And that's just what Oreye got, which gave him unjustified advantages over the average defendant. We are disinclined to

fixate on the label "standby counsel" and reverse a judgment that not only was amply supported by the evidence and untainted by any mistakes in representation at trial, but capped a trial in which the defendant who complains about denial of counsel had more representation than criminal defendants are entitled to.

Affirmed.