In the

# United States Court of Appeals
### For the Seventh Circuit

———————

No. 07-1709

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL L. ALDEN,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04 CR 40043—**G. Patrick Murphy**, *Judge.*

———————

ARGUED FEBRUARY 20, 2008—DECIDED MAY 30, 2008

———————

Before EASTERBROOK, *Chief Judge,* and BAUER and
WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant-Appellant Michael
Alden was convicted of conspiring to manufacture, to
possess with the intent to distribute, and to distribute in
excess of 500 grams of methamphetamine in violation of
21 U.S.C. §§ 841(a)(1) and 846. Alden appeals various
rulings made by the district court, as well as his sen-
tence. For the following reasons, we affirm.

## I. Background

From 1998 until 2004, Alden, along with approximately thirty other individuals, manufactured and sold methamphetamine throughout several counties in southern Illinois. A grand jury returned a suppressed indictment on July 7, 2004, charging conspiracy to manufacture, to possess with the intent to distribute, and to distribute in excess of 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Alden was represented by the Federal Public Defenders Office for his arraignment on July 9, 2004; that same day, the district court individually appointed Alden an attorney ("Attorney #1").

After three superceding indictments and a lapse of two years, the case went to trial. During the two years between indictment and trial, three different attorneys were appointed to represent Alden, none to his liking.

On October 4, 2004, Alden filed a *pro se* motion for appointment of new counsel, claiming that Attorney #1 refused to file a laundry list of motions. Attorney #1 advised the district court that Alden called his office, cursed at him, and threatened to "go after" him if he did not do the things Alden wanted. Attorney #1 explained that he was willing to file all motions that were consistent with his ethical obligations to the court, and that he had been trying to work with Alden to get the information needed to file certain motions, but Alden had refused to communicate with him. Alden persisted in his demand for new counsel, and the district court advised Alden: "I'm going to bend over backwards to satisfy you, and I'm going to let [Attorney #1] withdraw if he wants to, and I'll get another attorney. I'll tell you this. I don't know who it will be. I'll appoint another attorney, and if that doesn't work out, you're on your own."

On November 4, 2004, Alden was appointed his second counsel ("Attorney #2"). A few months after that appointment, however, Attorney #2 filed a motion to be appointed standby counsel and to allow Alden to proceed *pro se*, since Alden insisted on continuing to file *pro se* motions despite Attorney #2's representation. Shortly thereafter, Alden filed another *pro se* motion of ineffective assistance of counsel in which he complained that Attorney #2 was not filing motions that he felt should have been filed.

On September 8, 2005, the district court conducted a hearing on Attorney #2's motion and Alden's *pro se* motions. Attorney #2 explained that he filed the motions which he believed were consistent with his ethical obligations and that he had explained to Alden the dangers associated with filing *pro se* motions (e.g., that they become part of the court record and the prosecution gets copies of them) and representing himself. The district court told Alden that Attorney #1 and Attorney #2 were very good lawyers, and that Alden would have to make up his mind as to whether he would accept Attorney #2's services or represent himself. The district court told Alden:

> I think you would not be well served if you didn't take [Attorney #2's] services. I think it would be the wrong thing for you to do, but you've got to fish or cut bait today. You're going to have to say yes or no one way or the other. . . . I'm going to hear from you what you want to do. You want to represent yourself or do you want [Attorney #2] to do it? If you represent yourself I'll have him to serve as standby counsel. . . . He's rendering good service to you, and that's all anybody could do. . . . You have adequate

counsel, and I'm going on record with that, you have adequate counsel. . . . I can't give you anybody else that's more competent than he is to represent you.

Alden refused to answer the district court's question and said, "I don't want him to represent me, and I don't want to represent myself." The district court advised Alden that he could hire private counsel at his own expense, but Alden maintained that he could not afford private counsel. The district court then ruled: "You made a decision that based on what you say and the tenor of this whole [hearing], you don't want [Attorney #2] to represent you. You want to represent yourself."

For the next thirteen months, Alden represented himself (with Attorney #2 as standby counsel), filing numerous motions with the district court. On August 2, 2006, Attorney #2 filed a motion to withdraw as standby counsel. Another hearing was held, and Attorney #2 explained to the court that Alden had "hit on" and threatened his secretaries, and had threatened him with physical harm. On August 30, 2006, the district court granted Attorney #2's motion to withdraw, and appointed Attorney #3 to serve as standby counsel to Alden. Less than a month later, Alden filed a *pro se* filing entitled "Lawyer Issues," in which he complained that Attorney #3 would not file any motions challenging the validity of the suppressed indictment filed by the government.

On October 10, 2006, the district court held a hearing and appointed Attorney #3 to be Alden's full counsel. However, Alden maintained that he was not adequately represented because Attorney #3 would not argue that the suppressed indictment was invalid and would not commit to calling every witness that he wanted called. When the district court explicitly asked Alden if he

wanted Attorney #3 to represent him, Alden responded affirmatively. Trial was then scheduled to commence on November 14, 2006.

On November 7, 2006, Attorney #3 advised the court that he had recently received over one thousand pages of recent discovery documents, and that he would not be ready to effectively represent Alden on the trial date of November 14, 2006. Attorney #3 requested a continuance, but Alden refused to agree to a continuance and said he would waive the automatic thirty-day continuance to which he was entitled under the Speedy Trial Act. Alden said that he would rather represent himself on November 14, 2006 than have any delay to allow Attorney #3 to properly prepare for trial. The district court advised Alden that the mandatory statutory penalty he faced if convicted was twenty years to life, that federal criminal conspiracy cases were complicated and subject to broad and complex rules of evidence, that he would be disadvantaged by his lack of legal training and experience in criminal defense cases, that representing himself would be unwise, and that *pro se* litigants are held to the same evidentiary and procedural rules as licensed attorneys. Alden stated that he understood all of these things. The district court asked Alden about his educational background, his experience with the criminal justice system and criminal trials, and again opined that Alden was ill-suited to proceed *pro se*. Despite these admonitions, Alden told the court that he wanted to represent himself, and the court appointed Attorney #3 standby counsel.

The trial began as scheduled on November 14, 2006. On the second day of trial, Alden filed more motions, including a motion to withdraw his waiver of the thirty-

day continuance. That motion was denied, and after a three-day trial, a jury found Alden guilty of the drug trafficking conspiracy as charged.

On March 26, 2007, a sentencing hearing was held, at which Alden represented himself with Attorney #3 as standby counsel. The district court agreed with the government's position that Alden was responsible for 5.1 kilograms of methamphetamine, and that Alden "knew that he was having his wife testify to something that was false," warranting a two-level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1. Based upon its findings, the district court determined that Alden's sentencing range was 324-405 months with a statutory range of imprisonment of twenty years to life. The district court sentenced Alden to 324 months' imprisonment. Alden timely appealed, and this Court appointed appellate counsel for Alden.

On October 11 and October 22, 2007, Alden filed *pro se* motions with this Court, in which he alleged ineffective assistance of appellate counsel because his attorney refused to raise concerns about the validity of the suppressed indictment and other issues that Alden wanted raised, and asked this Court to disregard appellate counsel's brief. Those motions, along with a *pro se* motion to reconsider those motions, were denied.

## II. Discussion

Alden brings an array of arguments on appeal, including several in a supplemental brief filed by Alden himself. We address the arguments warranting discussion in turn.

### A.  The Indictment

Alden has persistently argued that the indictment for the drug conspiracy is invalid because it was "suppressed." We address this not because it has merit, but because we wish to put Alden's argument at rest once and for all. Undoubtedly, several attorneys and judges have already explained to Alden that the initial indictment was in no way defective because it was "suppressed." A suppressed indictment is simply an indictment filed under-seal until the defendant is in custody, as allowed by Federal Rule of Criminal Procedure 6(e)(4).[1] *See also* 22 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Crim. 3d* § 830 (2008).

The indictment was unsealed on July 9, 2004, the day Alden was arraigned on the charges. Furthermore, three superceding indictments followed, all of which were valid and included the same drug conspiracy charge. Alden went to trial on the third superceding indictment, and he makes no argument that that indictment was invalid, and for good reason; the indictment in this case was valid.

### B.  Competency

Alden contends that the district court erred in failing to order a competency hearing *sua sponte* in light of his irrational behavior throughout the proceedings, namely

---

[1] Rule 6(e)(4) states, in pertinent part, that "[t]he magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial."

his obsession with irrelevant issues and his paranoia and distrust of the criminal justice system.

A court may, on its own motion, order a hearing on the competency of a defendant "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a); *United States v. Savage*, 505 F.3d 754, 758 (7th Cir. 2007); *see Pate v. Robinson*, 383 U.S. 375, 385 (1966) (holding that a judge must provide a competency hearing on his own motion if the evidence raises a bona fide doubt as to the defendant's competence to stand trial). The district court is in the best position to determine the need for a competency hearing. *Savage*, 505 F.3d at 760. We review the district court's decision not to order a competency hearing for abuse of discretion and its findings regarding a defendant's competence only for clear error. *United States v. Ewing*, 494 F.3d 607, 622 (7th Cir. 2007); *United States v. Downs*, 123 F.3d 637, 641 (7th Cir. 1997).

There is no question that Alden understood the charges against him and was capable of assisting in his own defense. Alden was very active and vocal throughout every step of the judicial process. Despite his reluctance to listen to his attorneys and the court, Alden displayed a clear understanding of the proceedings and was able to assist in his defense.

In a nearly identical case, this Court found similar behavior by a criminal defendant to be "common, sometimes because of suspiciousness and sometimes just because the accused is trying to throw a monkey

wrench into the proceedings.*" United States v. Timberlake*, 409 F.3d 819, 823 (7th Cir. 2005). We continued:

> Many defendants express dissatisfaction with counsel, assert that their rights have been denied at every turn (because they have an unreasonable view of what rights they possess), demonstrate that they do not understand how the legal system handles witnesses and investigators (that's why they need lawyers, after all), and forget or choose to ignore what judges said earlier. Many defendants even dismiss their lawyers because they suppose without justification that more should be done to assist them.

*Id.* (internal citations omitted). We have also noted that "persons of unquestioned competence have espoused ludicrous legal positions," but the articulation of unusual legal beliefs is a far cry from incompetence. *United States v. James*, 328 F.3d 953, 955 (7th Cir. 2003).

Although Alden has demonstrated that he can be rude, unreasonable, and myopic in his approach to this case, that is not the same as incompetence and is not the type of conduct that implies the kind of mental shortcomings required to oblige a district court to *sua sponte* order a competency examination. The district court did not err by not ordering a competency examination. Alden was competent to stand trial. Simply being a monumental pain in the neck is not a symptom of incompetency; it is usually a symptom of stupidity.

## C.  Self-Representation

Next, Alden contends that the district court erred by allowing him to proceed *pro se* with standby counsel.

Although Alden (through his appellate counsel) acknowl-
edges his uncooperative nature with the various ap-
pointed counsel, he argues that his Sixth Amendment
right to counsel was violated when the district court twice
found—once on September 8, 2005, and again on Novem-
ber 7, 2006—that Alden had waived his right to counsel
and elected to proceed *pro se*.

We first address whether Alden waived his right to
counsel. Although Alden has a right to the assistance of
counsel under the Sixth Amendment, he does not have the
right to counsel of his choice. *United States v. Oreye*,
263 F.3d 669, 671 (7th Cir. 2001). A district court is not
required to appoint a new lawyer each time the de-
fendant requests one. *See id.* (holding that the district court
judge was fully within his rights to refuse to appoint a
defendant a third attorney when he has no legitimate
basis for being dissatisfied with his second appointed
counsel). "[A] defendant can waive his right to counsel
through conduct as well as words." *Id.* at 670 (citing
*United States v. Irorere*, 228 F.3d 816, 827-28 (7th Cir. 2000)).
A defendant waiving his right to counsel must do so
knowingly and intelligently. *United States v. Todd*, 424 F.3d
525, 530 (7th Cir. 2005). "[S]o long as the district court has
given a defendant sufficient opportunity to retain the
assistance of appointed counsel, defendant's actions
which have the effect of depriving himself of appointed
counsel will establish a knowing and intentional choice."
*Irorere*, 228 F.3d at 828 (quoting *United States v. Fazzini*,
871 F.2d 635, 642 (7th Cir. 1989)). What is said to the
defendant in warning him of the dangers of waiving
counsel is unimportant, so long as it is established that
the defendant made a knowing and informed waiver
of counsel. *Todd*, 424 F.3d at 531.

Four factors are considered in determining whether a waiver was knowing and intelligent: (1) whether and to what extent the district court conducted a formal hearing into the defendant's decision to represent himself; (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation; (3) the defendant's background and experience; and (4) the context of the defendant's decision to waive his right to counsel. *Todd*, 424 F.3d at 530. Because competent individuals have a constitutional right to self-representation, a district court can not force a defendant to proceed with unwanted counsel. *Faretta v. California*, 422 U.S. 806, 820-21 (1975).

On September 8, 2005, after Alden expressed his dissatisfaction and inability to work with Attorney #2, the district court held a hearing and gave Alden an ultimatum: accept Attorney #2's services, hire private counsel, or proceed *pro se*. Alden claims that this ultimatum effectively coerced Alden into representing himself. We disagree. This is the same ultimatum the district court gave the defendant in *Oreye*. *See Oreye*, 263 F.3d at 670; *see also Irorere*, 228 F.3d at 827-28 (explaining that after refusing to work with four appointed attorneys, defendant's conduct constituted a decision to represent himself). Alden refused to make that decision for himself, and the district court could not force Alden to continue with Attorney #2. Alden stated that he could not afford to hire private counsel, so he left the district court with only one option: to have Alden proceed *pro se*.

The district court also adequately warned Alden of the risks involved in proceeding *pro se* and advised him against doing so. The record also shows that both Attorney #1 and Attorney #2 advised Alden of the dangers

associated with proceeding *pro se*, such that Alden was well-aware of the dangers and disadvantages involved in self-representation. Alden's conduct required the district court to make the determination that he had effectively waived his right to counsel and wished to proceed *pro se*, and the district court in no way erred in doing so.

Alden also claims his waiver of his right to counsel on November 7, 2006 was not knowing and intelligent, thus the district court erred by accepting it. Again, we disagree. Attorney #3 was appointed full counsel on October 10, 2006. Shortly thereafter, Attorney #3 requested a continuance in order to prepare for trial, and Alden filed a *pro se* motion to proceed *pro se*. The district court held a formal hearing on Alden's motion and Attorney #3's motion for a continuance. At that hearing, Alden made it very clear that he wanted to proceed *pro se* rather than allow a thirty-day continuance to delay his trial so that his attorney could adequately prepare. The district court explained to Alden the complex nature of the conspiracy charges against him and that *pro se* litigants are held to the same procedural and evidentiary standards as licensed attorneys. The district court asked Alden about his educational background and experience with the criminal justice system, and said that he felt Alden was ill-prepared to represent himself. Nevertheless, Alden said he understood all of these things and wished to represent himself. Nothing suggests that Alden's decision was anything but knowing and intelligent (insofar as any decision to represent oneself in a criminal case can be deemed "intelligent"). In light of Alden's clear desire to represent himself and his constitutional right to do so, the district court's decision to accept Alden's waiver of counsel was proper.

**D. Sentencing**

Alden also contends that the district court made various errors in sentencing him.[2] First, Alden argues that the district court failed to properly consider the factors under 18 U.S.C. § 3553(a) in determining his sentence.

We use a non-deferential standard of review when determining whether the district court followed proper post-*Booker* sentencing procedures. *United States v. Price*, 516 F.3d 597, 606 (7th Cir. 2008); *United States v. Rodriguez-Alvarez*, 425 F.3d 1041, 1046 (7th Cir. 2005). Section 3553(a) provides that the following factors should be considered in imposing a sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, deter criminal conduct, protect the public from the defendant, and provide the defendant with needed training and treatment; (3) the kinds of sentences available; (4) the appropriate sentencing range under the applicable Guidelines issued by the Sentencing Commission; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a). The district court

---

[2] In his opening brief, Alden asserted that the district court made a basic mathematical error in adding up the various drug quantities. However, at oral argument, Alden's counsel conceded that there was no error on the district court's part, and that the drug quantities were properly calculated. We therefore need not address Alden's arguments pertaining to this alleged procedural error or that the alleged error resulted in an incorrect Guidelines range calculation.

judge need not apply all § 3553(a) factors in a systematic or "checklist fashion." *Price*, 516 F.3d at 606; *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). The district court may comport with its obligations by simply giving an adequate statement of reasons, consistent with § 3553(a), for believing the sentence it selects is appropriate. *United States v. Harris*, 490 F.3d 589, 597 (7th Cir. 2007). If the district court does so, and the sentence rendered is within the applicable Guidelines range, the sentence it selects will be presumed reasonable by this Court. *United States v. Wachowiak*, 496 F.3d 744, 748-49 (7th Cir. 2007).

The district court judge adequately considered the § 3553(a) factors and explained why Alden's sentence was appropriate. The judge referred to Alden's history as "tawdry, and it goes back for years and years and years." The judge also discussed: (1) law enforcement's inability to deal with Alden's criminal activities, and but for the success of this government investigation and prosecution, that Alden would certainly have continued his life of crime; (2) Alden's prior convictions and his many incarcerations, all of which failed to deter him from future crimes; and (3) Alden's drug addiction, stating that professionals would be available in prison to help treat and protect Alden. The district court judge then turned to the Sentencing Guidelines, and decided to sentence Alden "at the very lowest end of the guideline." The district court gave an adequate statement of reasons consistent with the factors.

Next, Alden argues that the district court erred when it ended his allocution even though he stated that he was not yet finished speaking. Alden raises this argument for the first time on appeal, and we therefore re-

view it for plain error only. *See United States v. Leupke*, 495 F.3d 443, 446-48 (7th Cir. 2007) (deciding as a matter of first impression that the right to allocution is subject to forfeiture, thus plain error is the appropriate standard of review where no contemporaneous objection is made). Under plain error review, an error must be "clear or obvious" and "affect [the defendant's] substantial rights*." United States v. Schalk*, 515 F.3d 768, 776 (7th Cir. 2008). If there is plain error, this Court will reverse if it determines, in its discretion, that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Luepke*, 495 F.3d at 448 (quoting *United States v. Simpson*, 479 F.3d 492, 496 (7th Cir. 2007)).

Federal Rule of Criminal Procedure 32 provides that, "[b]efore imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information *to mitigate the sentence. . . .*" Fed. R. Crim. P. 32(i)(4)(A)(ii) (emphasis added). This right is not unlimited, however. *See United States v. Eibler*, 991 F.2d 1350, 1356 (7th Cir. 1993) (noting that defendant was entitled to right to allocute, but not to allocute *in camera*); *United States v. Carter*, 355 F.3d 920, 926 (6th Cir. 2004) (statements contesting matters previously raised and decided against the defendant are not proper during allocution); *United States v. Muniz*, 1 F.3d 1018, 1025 (10th Cir. 1993) (allocution is not the time to reargue facts or law); *United States v. Kellogg*, 955 F.2d 1244, 1250 (9th Cir. 1992) (right to allocution is limited to statements designed to mitigate sentence).

Alden elected to use his allocution time to try read a motion he had previously filed. The district court told Alden that reading it into the record was unnecessary as it was already on the record, and invited Alden to speak

about himself, his wife, or his family. Alden disregarded the district court's invitation and began to summarize his motion and make legal arguments about the statutory sentencing enhancements filed in this case. The district court did not interrupt Alden despite its instruction not to focus on the motion or legal arguments. After Alden was finished, the district court again asked him if he had anything to say before being sentenced, and reminded him to focus on addressing the court, the public, or his wife, and to save legal arguments for another time. Alden again paid no attention to the district court's instruction and began to argue that his co-defendants received lighter sentences despite statutory enhancements, and that a sentence of twenty years (the statutory minimum for Alden's conviction) would be "bogus." After a brief apology to his family for the effects his drug addiction has had on his relationships with them, Alden criticized the legal system's prosecution of drug addicts and again veered back to legal arguments addressing the merits of his conviction. Perceiving Alden's statements to mean that he has nothing to say in mitigation of his sentence and was not going to confine his comments to the boundaries of an allocution, the district court properly interrupted Alden and continued with the sentencing. Alden's right to allocution was not violated; the district court simply limited it, in an entirely appropriate manner, to the purpose of Rule 32.

Alden also contends that the district court erred by enhancing his sentence based on his prior felony drug conviction under 18 U.S.C. § 851 and for obstruction of justice under U.S.S.G. § 3C1.1. Alden bases this argument on the fact that the grounds for the enhancements were not submitted to the jury. This argument is without merit since neither enhancement required a jury

determination. *See United States v. Williams*, 410 F.3d 397 (7th Cir. 2005) (prior convictions); *Price*, 516 F.3d at 607 (obstruction of justice enhancements).

Alden also argues that the § 851 enhancement for the prior drug conviction is improper because it is based on the same charged conspiracy of which he was convicted here. Alden is again mistaken; the § 851 enhancement was filed in relation to Alden's November 13, 2001 conviction for Unlawful Possession of Cannabis with Intent to Deliver, which in turn relates to his February 11, 1999 arrest during which he also possessed meth precursors. Besides, even if the enhancement had been based on the same drug conspiracy charged here, the enhancement was still proper. *See United States v. Garcia*, 32 F.3d 1017, 1019-20 (7th Cir. 1994) (holding that where a defendant continues his involvement in a conspiracy after a factually related conviction becomes final, that conviction is properly used as a "prior conviction" under § 851). Thus, the district court did not err in applying the sentence enhancements.

In his supplemental brief, Alden makes countless other arguments as to why his conviction should be reversed. None of these arguments are adequately developed or even cite any substantive legal authority for support. Because it is not the obligation of this Court to research and construct the legal arguments available to parties, *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006), these arguments are waived and warrant no discussion. *See Perez v. Illinois*, 488 F.3d 773, 776-77 (7th Cir. 2007); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

### III. Conclusion

In closing, we acknowledge Alden's contempt for the criminal justice system and his false belief that the world is out to get him, but we warn him to be cautious of the slanderous remarks he readily made against his attorneys and the district court judge throughout the proceedings of this case. Alden has filed complaints with the Attorney Registration and Disciplinary Commission against all of his appointed counsel (including appellate counsel), despite their generous and competent service to him. Alden also referred to the district court judge as "vindictive" in his supplemental brief. Rest assured, Alden has had his day in court. Instead of accepting the consequences of his criminal conduct, Alden seeks to abuse the system by continuing to make unfounded accusation against third parties. This conduct will not be tolerated, nor will it be entertained by this Court.

For the foregoing reasons, we affirm Alden's conviction and sentence.