In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2652

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BILLY COVINGTON,

*Defendant-Appellant,*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cr-00253-1—**James B. Zagel,** *Judge.*

ARGUED JANUARY 18, 2012—DECIDED MAY 25, 2012

Before BAUER, MANION and WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* The defendant-appellant, Billy Covington, robbed a bank in Lansing, Illinois. He was arrested and pleaded guilty to the crimes of bank robbery ("Count 1") and brandishing a firearm during a bank robbery ("Count 2") under 18 U.S.C. § 2113(a) and 18 U.S.C. § 924(c)(1)(A). On July 14, 2011, the district court sentenced Covington to 36 months in prison on Count 1 and a consecutive sentence of 84 months on Count 2.

Covington appeals, arguing that during the sentencing hearing, the district court denied him his right of allocution under Federal Rule of Criminal Procedure 32. We disagree and affirm the sentence.

## I. BACKGROUND

Because Covington's challenge turns only on the procedures employed at the sentencing hearing, we confine our discussion of the facts to the hearing only. The district court began the proceeding by hearing arguments in favor of each party's proposed sentence. Then, pursuant to Federal Rule of Criminal Procedure 32(i)(4)(A), the court invited the defendant to speak on his own behalf, and Covington obliged. Although the exact amount of time Covington spoke is unknown, the transcript indicates a 6-page span in which he spoke at length on a variety of topics, including his troubled childhood, his relationships with various family members, and his time in the U.S. military.

Eventually, in the midst of Covington's detailed discussion of his military experience, the district court interjected:

> The Court:    Mr. Covington.
>
> Covington:    Yes.
>
> The Court:    Maybe you ought to start someplace else.
>
> Covington:    Pardon me?
>
> The Court:    Why did you go into the bank, Mr. Covington?

Covington:   Okay. I am going to tell you.

The Court:   No, tell me right now.

Covington:   Okay. I went into the bank to kill myself.

Covington then proceeded to speak further, but he brought the topic back to his war experience. Eventually, the court asked another question:

Covington:   I get tired sometime[s]. Let me make this real short, Judge Zagel.

The Court:   Let me ask you another question.

Covington:   I get tired.

The Court:   Let me ask you another question. Are the flashbacks the reason that you use drugs?

Covington then briefly discussed his drug use and several suicide attempts. When Covington finished, the court concluded by thanking him and then inviting his wife to speak on his behalf.

At the conclusion of Covington's wife's appearance, the court announced that it was ready to hand down a sentence. In reaching the sentence, the court explained that it was motivated in part by its belief that Covington was a danger to himself and to others. The court believed his suicidal tendencies prevented him from soberly assessing the risk he posed to others in general and in particular when he robbed the bank. It also expressed concern over Covington's difficulty in sticking with a course of mental health treatment. The court ultimately announced sentences of 36 months on Count 1

and 84 months on Count 2 to run consecutively. It also recommended drug rehabilitation and mental health treatment programs.

## II. DISCUSSION

Covington's sole argument is that the district court denied him his right of allocution at his sentencing hearing. He failed to object on this ground in the district court and raises the argument for the first time on appeal. We therefore review his claim only for plain error. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993); *United States v. Luepke*, 495 F.3d 443, 448 (7th Cir. 2007); *United States v. Williams*, 258 F.3d 669, 672 (7th Cir. 2001). To succeed under the plain error standard, Covington must show (1) that the district court erred; (2) that the error was plain; and (3) that the error affected his substantial rights. *Luepke*, 495 F.3d at 448. If he meets these three criteria, we may exercise our discretion to remand for resentencing if the error " 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Id*. (quoting *Olano*, 507 U.S. at 732).

A defendant's right of allocution does not stem from the Constitution, but this court has nevertheless recognized it as an important right that district courts must construe liberally. *See United States v. Barnes*, 948 F.2d 325, 328-30 (7th Cir. 1991). It is codified under Federal Rule of Criminal Procedure 32(i)(4)(A)(ii), which states that at sentencing, the court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." As

we have noted, however, the right is not without its limitations. *See United States v. Alden*, 527 F.3d 653, 663 (7th Cir. 2008) (collecting cases describing limits on the right to allocute).

We acknowledge that the district court interrupted Covington in order to ask him a question. But an interruption by the court does not in itself amount to a denial of a defendant's right of allocution. This is especially true in this case, where the court's interruption was an attempt to refocus the defendant's statements on mitigation rather than to terminate the allocution completely. For example, Covington went into great detail about his various altercations with his father, and at one point he recounted a confusing story in which he asked a blind man not to say his name as his father was walking nearby. Although the court interjected with questions, it permitted Covington to answer them fully and even permitted him to veer away from the original subject matter of those questions. While Covington was free to speak about whatever he wished, the court's interruption was a reasonable attempt to get him back on track and thus a reasonable limitation on his right of allocution.[1]

---

[1] The dissent takes the position that the majority opinion curtails the right of allocution. It does not. Only if one equates the right of allocution with the right to filibuster, can such a charge be levied. A trial judge listening to rambling discussions that seem to lead nowhere has a right to steer the defendant to some connection between a cradle-to-the-grave biographical sketch and a statement that relates to the matter

(continued...)

Even if we were to find that the court's interruption was plain error, that error would not affect Covington's substantial rights. An error affects substantial rights when that error prejudices the defendant. *Luepke*, 495 F.3d at 450-51. This court will presume prejudice "when there is any possibility that the defendant would have received a lesser sentence had the district court heard from him before imposing sentence." *Id.* at 451. Here, as previously noted, the district court did hear from Covington on a variety of different topics. And Covington argues that if he had not been interrupted, he would have offered details about his traumatic combat experiences, his substance abuse problems, and his impaired mental health. But he had already touched on all these topics and more during his allocution. He could have spoken further about them, but this would not have afforded him a lesser sentence. The court explained that its rationale for the sentence had nothing to do with retribution or deterrence and everything to do with incapacitation. It is precisely *because* Covington suffers from severe mental health and substance abuse problems that the court determined he was a danger to himself and others. These problems also led the district court to recommend supervised treatment programs. It is difficult to see how more details regarding the severity of Covington's mental health problems could have convinced the court that the goals of incapac-

---

[1] (...continued)

at hand. The record shows that the defendant was given a right of allocution and used it fully.

itation and rehabilitation would be better served with a lesser sentence.

Covington urges us to view this case as similar to *United States v. Li*, 115 F.3d 125, 130-34 (2d Cir. 1997). In *Li*, the district court continuously interrupted the non-English-speaking defendant's allocution with "increasing impatience." *Id*. at 133. The defendant went on for only two pages of transcript before the court terminated the allocution completely, and the court's aggressive tone suggested that the defendant may have been too intimidated and confused to "speak meaningfully of the factors that she legitimately thought relevant to the mitigation of her sentence." *Id.* at 134. Specifically, the judge in that case believed that the defendant's claim of mental health problems was a ploy to gain sympathy. *Id.* at 131.

This case presents a vastly different interaction between the court and the defendant. Here, Covington was able to speak for at least six pages of transcript before the court's interruption. And as we have noted, that interruption was not intended to completely terminate the allocution or to intimidate Covington. Instead, the court posed questions designed to elicit information more relevant to mitigation. The court also made clear that it appreciated the severity of Covington's mental health and drug abuse problems and the value of his service in the military. In short, nothing here suggests that the right to allocution was "reduced to a formality." *United States v. Barnes*, 948 F.2d 325, 331 (7th Cir. 1991).

### III. CONCLUSION

For the foregoing reason, the district court's sentence is AFFIRMED.

WOOD, *Circuit Judge,* dissenting. The only question presented in this appeal is whether the district court committed plain error by denying defendant Billy Covington his right of allocution, which is guaranteed by Federal Rule of Criminal Procedure 32(i)(4)(A)(ii). My colleagues conclude that no error, plain or otherwise, occurred; in fact, they see the district court's interventions as helpful efforts to focus Covington's statements. In my view, the record shows exactly the opposite: The judge's interruptions had the effect of cutting off Covington's efforts to make his central points and in doing so, deprived Covington of his right "to speak or present any information to mitigate the sentence." *Id.* I therefore respectfully dissent.

The right of allocution codified in Rule 32 is one that is personal to the defendant. It is critical to the integrity of the sentencing process; as the Supreme Court has explained, "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with

halting eloquence, speak for himself." *Green v. United States*, 365 U.S. 301, 304 (1961). Following that lead, this court has elaborated on the value of the allocution, noting that it is a procedural protection "designed to enable our system of justice to mete out punishment in the most equitable fashion possible." *United States v. Barnes*, 948 F.2d 325, 328 (7th Cir. 1991); see also Kimberly A. Thomas, *Beyond Mitigation: Toward a Theory of Allocution*, 75 FORDHAM L. REV. 2641, 2644 (2007) (An allocution allows a defendant not only to provide "mitigating fact[s]" but also to discuss important "details" about his life that allow a court to impose a "nuance[d]" and "just sentence that is appropriate to the particular defendant."). From the perspective of the defendant, the allocution "has value in terms of maximizing the perceived equity of the process." *Id.*

In this case, the district court defeated both the broader purpose and the practical utility of allocution by refusing to let Covington speak for himself and instead confining Covington's contribution to a brief question-and-answer session. Although the court did invite Covington to speak, as is required by *Green*, it interfered almost immediately when he tried to take advantage of that invitation. Rather than listening for at least a few minutes (and note that, as the majority concedes, only six pages of double-spaced transcript were needed to record Covington's statements), the court interrupted him and demanded that Covington discuss the topics that the district court was interested in rather than raise the points that Covington himself thought should be considered as mitigating factors. When Covington

indicated that he would get to the court's questions in the course of his statement, the court cut him off, saying "No, tell me right now."

When it comes to allocution—the defendant's *own* chance to tell his story—it is hard to see how incessant interruptions from the court could ever be helpful. This is not to say that the court has to listen for hours to a wordy defendant, and it certainly is not to say that the court is obliged to respond in any particular way to the defendant's statements. But the court does have an obligation to *listen*, not to talk, during the time that the Rules give to the defendant. Even if, after some time has elapsed, the court is entitled to invite the defendant to address a subject that interests it, Covington's is not a case in which the court's interventions can fairly be characterized as helpful "attempt[s] to get him back on track." Opinion at 5. Earlier in the sentencing proceeding, Covington's lawyer, Rosalie Guimarães, had tried to argue that Covington was mentally unstable and attempting to engage in the practice known as "suicide by police." See generally "Suicide by cop," en.wikipedia.org/wiki/Suicide_by_cop. The court responded to Guimarães by saying "I am willing to accept your proposition that this may be suicide by police. I am willing to accept that. The question is, what difference does that make in sentencing?" During Covington's allocution, the court's questions returned to the same issue: "[Q] Why did you go into the bank, Mr. Covington? . . . [A] I went into the bank to kill myself." And then again, a bit later, "[Q] Do you still feel that way? Do you have times when . . . you wanted to

end your life?" Ultimately, the court justified the imposition of a near-top-of-the guidelines sentence by reference to his suicidal tendencies, specifically mentioning Covington's responses to his questions. The court thus knew about and was considering the effect of Covington's mental health problems before the allocution began, but it inexplicably steered Covington away from talking about points that Covington thought would be mitigating evidence addressing that very problem. It then used the responses it had elicited from Covington to justify a higher sentence.

I am troubled by the way in which the majority reads the end of Covington's statement. As they put it, "When Covington finished, the court concluded by thanking him and then inviting his wife to speak on his behalf." Opinion at 3. But the full transcript leaves me, at least, with a very different picture. After the court's first interruption, Covington continued his allocution for a meager 12 additional lines. Then the following exchange took place:

THE COURT: Let me ask you another question. Are the flashbacks the reason that you use drugs?

THE DEFENDANT: I have tried to kill myself with them. I have tried to kill myself several times. I've tried to OD to [*sic*] drugs. And I tried—I get—smoked some drugs and, then, I tried to cut my—tried to hang myself. If I get high, I tried

to cut my wrists because I can't
stand the pain.

THE COURT:          **I have one last question and,
then, I am going to hear from
your wife.** Do you still feel that
way? Do you have times when
you have been in custody, that
you wanted to end your life?

THE DEFENDANT: Yes.

THE COURT:          Okay. Thank you, Mr. Coving-
ton. His wife?

Tr. (July 14, 2011) at 29 (emphasis added). This does not
strike me as an innocuous "thank you" followed by a
request for the next witness. It indicates instead that
the court had no interest in listening to anything else
Covington had to say, that it asked two final questions,
and then it cut him off. Nothing in this passage
suggests that "Covington finished."

   Although appellate courts are rightly cautious about
finding plain error, I believe that it occurred here. This
court, as well as other circuits, have repeatedly em-
phasized the value of the allocution, and so it should
have been clear to the sentencing judge that he had
an obligation to allow Covington to finish his state-
ment. That is so even if the judge was bored by what
Covington was saying, or did not find his comments to
be particularly mitigating, or was impatient to wrap the
proceedings up. (I emphasize again that there is no evi-
dence in this record that Covington took up an undue
amount of time; had the judge said anything to that

effect when he cut Covington off, this would be a dif-
ferent case.) *Barnes* provides this court's fullest and
clearest articulation of the value of the allocution right.
There, we noted that:

> The right of allocution is minimally invasive of the
> sentencing proceeding; the requirement of providing
> the defendant a few moments of court time is slight.
> Because the sentencing decision is a weighty responsi-
> bility, the defendant's *right to be heard must never be
> reduced to a formality*. In an age of staggering crime
> rates and an overburdened justice system, *courts
> must continue to be cautious to avoid the appearance of
> dispensing assembly-line justice*.

*Barnes*, 948 F.2d at 331 (emphasis added). *Barnes* also
underscored the value of allocution in ensuring that
punishment is meted out equitably in reality, not just
on paper, and—equally importantly—that it is per-
ceived to be imposed equitably. *Id.* at 328. Other circuits
have agreed that the defendant should be given an op-
portunity to speak freely and broadly about any
mitigating fact that the defendant (not the court) deems
relevant. See *United States v. Li*, 115 F.3d 125, 130-34 (2d
Cir. 1997) (right to allocute violated if defendant cannot
"speak meaningfully of the factors that *she legitimately
thought relevant* to the mitigation of her sentence" (empha-
sis added)); *United States v. Burgos-Andujar*, 275 F.3d 23, 29
(1st Cir. 2001) (noting sentencing court should "allow
the defendant to speak on all topics which *the defendant*
considers relevant" (emphasis altered)). I find my col-
leagues' opinion to be inconsistent with the long line

of cases supporting the historical office of the allocution right, which is to provide the defendant with an unfettered opportunity to present a plea for mercy. 1 Joseph Chitty, A PRACTICAL TREATISE ON THE CRIMINAL LAW 700 (London, A.J. Valpy 1816) (A defendant "addresses the court in mitigation of his conduct . . . or casts himself upon their mercy."); 4 William Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND 368 (Univ. of Chi. 1979) ("[The defendant] is either immediately, or at a convenient time soon after, asked by the court, if he has anything to offer why judgment should not be awarded against him.").

Because the court does not find plain error, it does not reach the question whether the court's premature termination of Covington's allocution prejudiced him. Since I would find that plain error occurred, I add a word about prejudice. To begin with, this is one of those situations in which prejudice is presumed. See *United States v. Luepke*, 495 F.3d 443, 451 (7th Cir. 2007). But even apart from any presumption, the record here contains hard evidence of prejudice. The court used Covington's responses to its questions—which centered around Covington's suicidal tendencies and the implicit threat of another dangerous public suicide attempt—as fodder for imposing a higher sentence. Covington, however, was trying to explain why any such threat had dissipated. In order to do so, Covington wanted to sketch out his background, his service in the U.S. Army, his flashbacks to his combat experiences in Operation Desert Storm (including a bombing to which he had been exposed), and the relation between his substance abuse and his

mental health problems, all for the purpose of showing why the therapy he was receiving from Dr. Farmilant had given him new insight into his problems and promised to be more successful than earlier rounds of treatment had been. He was never permitted to reach the last, critical point, nor was he allowed to show how his earlier problems were being successfully addressed through his current treatment. Indeed, Dr. Farmilant concluded that "it is unlikely that [Covington] will be a danger to the community upon release once his mood and anxiety issues are treated." This relates directly to the district court's finding that Covington could *not* overcome his mental health and substance abuse problems, and thus that as a danger to himself and others, a longer sentence was necessary. Covington's inability to present his own account on the central issue of his likely future need for incarceration prejudiced him.

For these reasons, I cannot join the majority's opinion. The facts do not bear out its characterization of the district court's interventions, and the end result so clearly resulted in the deprivation of Covington's right of allocution that it qualifies as plain error. I therefore respectfully dissent.