In the

# United States Court of Appeals
## for the Seventh Circuit

No. 24-2327

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LENNIE PERRY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 CR 703 — **Edmond E. Chang**, *Judge.*

ARGUED APRIL 16, 2025 — DECIDED APRIL 13, 2026

Before SYKES, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges.*

SYKES, *Circuit Judge.* In the three years from his indictment to trial on sex-trafficking charges, Lennie Perry refused to cooperate with five court-appointed lawyers and twice invoked his right to represent himself. Before each round of self-representation, the district judge conducted a comprehensive hearing confirming that Perry understood the consequences of waiving his Sixth Amendment right to counsel. *See Faretta*

*v. California*, 422 U.S. 806 (1975). At the second of these hearings, the judge warned Perry that this was the end of the line: a sixth attorney would not be appointed. Perry said he understood and continued to insist on representing himself.

When the trial started, Perry changed his mind again and requested a lawyer. The judge said no, just as he had warned. The jury convicted Perry as charged. He is serving a lengthy prison term.

On appeal Perry challenges the denial of his midtrial motion for a sixth court-appointed lawyer. He argues that the judge was required to consider his motives for changing his mind and assess the probable duration of delay. But the law imposes no such duty. When a defendant repeatedly refuses to cooperate with appointed counsel, the court may decline to appoint a new attorney. And once a defendant validly waives his right to counsel after a full *Faretta* hearing, the court may hold him to his decision. Perry cycled through five court-appointed lawyers and knowingly and voluntarily waived his right to counsel—not once but twice. The judge was not required to reassess the matter when Perry changed his mind again after the trial began. We affirm the judgment.

## I. Background

The specifics of Lennie Perry's crimes are not at issue on appeal, so a brief summary will suffice. From 2012 to 2017, Perry sex trafficked teenaged girls between the ages of 13 and 17. He drew them in by providing shelter, food, and money. He then exploited their dependence to get them to do sex work for him, using intimidation, threats, and physical and sexual abuse to control their behavior.

In 2018 a grand jury returned an indictment charging Perry with eight counts of sex trafficking minors in violation of 18 U.S.C. § 1591. The case was assigned to Judge Harry Leinenweber, and Attorney Darryl Goldberg was appointed to represent Perry.

From the outset, Perry showed little inclination to cooperate with his legal representative. He soon began peppering the court with pro se motions. These persistent filings led the judge to remind him of the importance of working with his counsel. For a time his pro se submissions stopped. The judge later appointed a second lawyer, Christopher Grohman, to assist Goldberg with Perry's defense.

It was not long before Perry reverted to his earlier pattern, with seven pro se filings in a two-week period—some of which violated the court's protective order prohibiting him from contacting victims and witnesses. Perry's attorneys moved to withdraw, advising the court that their client wanted to represent himself. In accordance with *Faretta*, the judge held a hearing to assess whether Perry's decision to waive his Sixth Amendment right to counsel was knowing and voluntary. During the colloquy, the judge reviewed Perry's educational background and familiarity with criminal law and cautioned him at length about the perils of self-representation. The judge highlighted the seriousness of the charges, the complexity of the case, and the challenges of defending himself while in custody. Perry remained steadfast, confirming several times that he wanted to represent himself. At the conclusion of the hearing, the judge accepted Perry's waiver of counsel, permitted counsel to withdraw, and appointed James Graham as standby counsel.

Two months later Perry changed his mind and asked the
judge to appoint Graham as his attorney. The judge indicated
that he was willing to do so but emphasized that Perry would
have to stop filing motions on his own. Perry agreed to this
condition, and the judge approved the request, reiterating
that all future motions would have to be submitted through
counsel.

Perry soon resumed filing pro se motions, prompting the
judge to reissue his prior warnings against pro se filings.
Perry's attorney moved to postpone the trial date as he strug-
gled to establish a workable attorney–client relationship. The
judge granted the continuance motion, but counsel's efforts
were in vain. In addition to his pro se filings, Perry insisted on
pursuing baseless claims of prosecutorial misconduct, racial
bias, and corruption. Understandably at odds with his client
on a proper defense, Graham moved to withdraw. Perry
objected and asked the court to appoint a new attorney who
would advance his theory that the prosecution was racially
biased and corrupt. His response to counsel's withdrawal
motion made clear that he was still trying to contact victims
and witnesses in violation of the protective order.

The judge held a hearing on counsel's motion to with-
draw. He asked Perry if he wanted a new attorney or pre-
ferred to keep Graham, cautioning him about the
consequences of continuing to refuse to cooperate with coun-
sel:

> [I]f you get another attorney and that attorney
> will not follow your requests as [to your] de-
> fense, I would not appoint another attorney af-
> ter that. So you can have one more attorney.
> And if you don't get along with that attorney or

> you don't agree with that attorney, you're going
> to be stuck with him or you're going to have to
> go by yourself.

Perry responded that he preferred to keep Graham, at least for the time being. Graham reminded the judge that he could not represent Perry given their fundamental disagreement over defense strategy. The judge agreed that Perry's conduct made the relationship untenable and permitted Graham to withdraw. The judge again addressed Perry directly, saying: "I'll appoint one more attorney for you, and that's it. You're going to either have to go with the next one or to represent yourself." The judge also reminded him about the protective order prohibiting him from contacting victims and witnesses.

The judge appointed Keri Ambrosio to represent Perry—his fourth court-appointed attorney. In less than a month Perry was back to submitting his own court filings, including one that sought to subpoena his previous counsel and others that continued his pattern of violating the protective order. Despite repeated warnings from the judge to cooperate with his appointed counsel, Perry persisted in his pro se submissions. The judge rescheduled the trial and appointed John Legutki as additional counsel for Perry—his fifth lawyer in less than 30 months.

After a brief pause, Perry resumed his pro se filings and eventually told the court that he wanted to fire both lawyers and return to representing himself. He expressly acknowledged the judge's earlier warning that no more court-appointed attorneys would be provided.

The judge held a status conference on Perry's latest shift. Perry confirmed that he did not want an attorney. The judge

again reminded him that he was "not getting another lawyer." Perry replied, "I want to go pro se, and I'm fine with that."

The judge then convened a formal *Faretta* hearing, repeating his prior colloquy with Perry about his background and again explaining the challenges of proceeding pro se. The judge reminded Perry that he faced serious charges with significant sentencing exposure of 15 years to life and that trials are complex and preparing a defense from jail is difficult. Perry said he understood and remained firm in his decision, so the judge accepted his waiver of counsel and appointed Legutki to serve as standby counsel.

Legutki asked the court for guidance on "the parameters" of his responsibilities. The judge explained that he could "assist" Perry in "whatever way he requests … within reason"—for example, "by offering advice on how to pick juries, filing papers, … and that sort of thing." Given Perry's history, the judge twice emphasized that Legutki was "not obligated to do anything that [he felt] would not be appropriate."

Two pretrial conferences followed. Perry twice sought to delay the trial, but the judge rejected his requests. The judge reviewed witness and exhibit lists and repeatedly explained the trial rules and procedures to Perry. The government moved to dismiss one of the eight charges; the judge granted the motion. Three years after indictment, the case proceeded to trial on the remaining seven sex-trafficking counts.

Once the jury was seated and the government began to present its case, Perry quickly ran into trouble. While cross-examining the government's first witness, he repeatedly interjected with his own version of events, ventured beyond the

scope of the examination, and improperly tried to introduce evidence. The judge blocked these efforts, reminding Perry that he could not testify while questioning witnesses and instructing him on the proper form of cross-examination.

After experiencing these setbacks with the first witness, Perry changed his mind about self-representation and asked for a lawyer. The judge summarily denied this request, saying that it was too late. The government asked the judge to conduct a colloquy about Perry's most recent change of heart. The judge declined, reiterating that Perry's request was untimely and amounted to nothing more than an attempt to delay the proceedings. Trial then resumed, and the jury found Perry guilty on all seven counts.

The judge then appointed a sixth lawyer, James Vanzant, to represent Perry for posttrial motions and sentencing. As relevant here, Vanzant's motion for a new trial challenged the judge's denial of Perry's midtrial request for counsel. The judge denied the motion, explaining that he retained the discretion to hold Perry to his waiver of counsel and that granting his request would have "inevitably" caused a delay because "standby counsel was not up to speed on the complex issues of the case." The judge also explained that his concern about delay was "underscored" by Perry's "repeated successful and unsuccessful attempts … to postpone the trial."

Perry resumed his pro se submissions, several of which again violated the protective order. Perry eventually asked the judge to remove Vanzant as his counsel. The judge granted the motion, but Vanzant agreed to stay on as standby counsel for purposes of sentencing. Judge Edmond E. Chang was assigned to the case after Judge Leinenweber died. After Perry filed a premature notice of appeal, the case moved

forward to sentencing. The judge imposed a sentence of 480 months in prison.

Vanzant accepted reappointment as Perry's appellate counsel. He was joined by Andrew Finke, a lawyer at his firm and the seventh attorney appointed to represent Perry.[1]

## II. Discussion

The Sixth Amendment secures the right to counsel for the accused in criminal prosecutions. U.S. CONST. amend. VI. The constitutional right to counsel has several aspects, including the defendant's right to paid counsel of his choice, the right to conflict-free counsel, and the right "to choose to forgo counsel and to represent himself." *United States v. Vizcarra-Millan*, 15 F.4th 473, 485 (7th Cir. 2021).

Like other constitutional rights, the Sixth Amendment right to counsel can be waived. And once a defendant has knowingly and voluntarily waived it, the district court may treat the waiver as binding. *Id.* at 497. Put slightly differently, "once waived, the right to counsel is no longer unqualified." *United States v. Kerr*, 752 F.3d 206, 220 (2d Cir. 2014). A defendant who has validly waived his right to counsel and chosen to represent himself "runs the risk that the judge will hold him to [that] decision." *United States v. Solina*, 733 F.2d 1208, 1211–12 (7th Cir. 1984). District judges have substantial discretion to enforce a waiver of counsel, especially after trial starts. As we have recognized, "[i]t is well within the discretion of the court to deny as untimely requests for counsel made after meaningful trial proceedings have begun." *United States v.*

---

[1] On appeal Perry has continued his pattern of numerous pro se filings. We have disregarded them. *See United States v. Skaggs*, 25 F.4th 494, 498 n.1 (7th Cir. 2022).

*Tolliver*, 937 F.2d 1183, 1187 (7th Cir. 1991). Appellate review is deferential; we will reverse only if we find an abuse of discretion. *Vizcarra-Millan*, 15 F.4th at 497.

Perry acknowledges these principles but argues that the judge abused his discretion by not pausing the trial to assess the reasons for his change of heart, the likelihood that a continuance would be necessary, the possibility that standby counsel could step in, and the probable duration of the delay. A judge certainly could have made any of these inquiries. But no authority mandates that step. As we've explained, once a defendant has knowingly and voluntarily waived his right to counsel and opted to represent himself, the judge may hold him to his decision if he later changes his mind. That's especially true if his change of heart occurs after trial is underway. Nothing in our caselaw requires a "*Faretta*-lite" inquiry in this situation—a mandatory colloquy to consider the defendant's motives and weigh the length of the delay—and we see no basis to impose such a requirement.

Perry does not challenge the validity of his waiver of his right to counsel. For good reason: the judge conducted two full *Faretta* colloquies, each of which was careful and complete. That was enough under the circumstances. *See United States v. Fazzini*, 871 F.2d 635, 643 (7th Cir. 1989) ("Once the defendant has knowingly and intelligently waived his right to counsel, only a substantial change in circumstances will require the district court to inquire whether the defendant wishes to revoke his earlier waiver.").

After two valid waivers of the right, the judge had ample discretion to summarily deny Perry's midtrial request for counsel. The judge was well aware of the relevant history: Perry's refusal to cooperate with five court-appointed

lawyers; his insistence on pursuing baseless claims of prose-
cutorial corruption and racial bias; his persistent attempts to
contact victims and witnesses in violation of the protective or-
der; the limits of standby counsel's role; and of course, the
substance of two full *Faretta* hearings confirming Perry's un-
derstanding of the consequences of self-representation. This
familiar background properly informed the judge's decision.
*See Vizcarra-Millan*, 15 F.4th at 499 (explaining that the court
may deny a defendant's request to withdraw a valid waiver
of counsel based on his past actions in the case). The judge's
summary ruling was not just permissible; on this record, it
was reasonable and fair.

There is a separate and sufficient rationale for the judge's
decision: a district judge may deny a defendant's request for
new counsel when he has driven off or fired all his prior at-
torneys. The Sixth Amendment does not entitle a defendant
to an endless succession of appointed counsel. *See United
States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008) ("A district
court is not required to appoint a new lawyer each time the
defendant requests one."). When a defendant has repeatedly
refused to cooperate with his court-appointed attorneys, it is
within a judge's discretion to announce that no new attorneys
will be provided and to require the defendant to either work
with his current attorney or proceed pro se. *See id.* at 661;
*United States v. Oreye*, 263 F.3d 669, 670 (7th Cir. 2001); *United
States v. Irorere*, 228 F.3d 816, 827–28 (7th Cir. 2000); *United
States v. Harris*, 2 F.3d 1452, 1455 (7th Cir. 1993).

Between his indictment and trial, Perry persistently
refused to work with a succession of five court-appointed
lawyers and was unambiguously warned of the consequences
of his continued refusal to cooperate and his decision to

represent himself. Under these circumstances, the judge was well within his discretion to deny Perry's midtrial request for counsel. *Irorere*, 228 F.3d at 828.

AFFIRMED