# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JIMMY ALDAOUD,

        Defendant-Appellant.

UNPUBLISHED
January 27, 2015

No. 318555
Oakland Circuit Court
LC No. 2012-241102-FH

Before: MURRAY, P.J., and SAAD and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by right from his bench trial convictions of home invasion, first degree, MCL 750.110a(2), and misdemeanor possession of marihuana, MCL 333.7403(2)(d). He was sentenced to serve 36 months to 30 years in prison for home invasion and 365 days for possession of marihuana. On appeal, defendant does not contest the factual basis of his convictions. To the contrary, he concedes it. However, because the trial court failed to substantially comply with the requirements of *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), and MCR 6.005(D)(1) in permitting defendant to represent himself at trial, we hold there was structural constitutional error requiring reversal. Accordingly, we vacate defendant's convictions and remand for a new trial.

## I. FACTUAL BACKGROUND

The complainant, Douglas Courter, was sleeping in his home in Ferndale when he was awakened by the sound of his garage door opening or closing. Upon investigating, Courter observed that the automatic garage door light was on. When the light went out about a minute later, Courter surmised that the garage door had just closed. Courter immediately called 911, and within five minutes the police arrived. While en route, Officer Palazzolo observed defendant walking down the street about two blocks from Courter's home. Officer Palazzolo testified that defendant was the only person he saw and that he did not otherwise notice any vehicles driving on the street at this time.

-1-

Office Palazzolo then informed Office Brugnoli by radio that defendant had a bag in his possession that contained three power drills: a Black & Decker, a Kawasaki, and a Porter Cable.[1] At this, Courter informed Officer Brugnoli—who was already at the scene—that he owned those types of drills. Courter subsequently discovered the drills were missing from his garage. The drills were then brought to the home at which point Courter identified them as his own. Courter confirmed that no one, including defendant, had permission to take those drills from his garage or to enter his home. During the investigation, it was determined that defendant gained entry to the garage by using a garage door opener from an unlocked vehicle in Courter's driveway.

## II. COMPETENCY DETERMINATION AND SELF-REPRESENTATION

Defendant waived both his preliminary examination and arraignment. At a pretrial hearing, defense counsel informed the court that although he had explained the home invasion charge and potential sentence to defendant, a competency report was in order. The trial court agreed. Defendant informed the trial court, however, that he may wish to represent himself at trial. The trial court took the matter under advisement, noting that it may be appropriate "to engage [defense counsel] to sit by you, by your side."

The parties subsequently stipulated, consistent with a competency report finding, that defendant was incompetent to stand trial. The trial court disagreed,[2] however, and a bench trial commenced. It was then that defendant reiterated his request to represent himself:

> *THE COURT*: You had mentioned something else just a second ago about proceeding on your own, I—another matter that is water under the bridge, so to speak, is whether or not there's any plea bargain between the parties, it doesn't sound like there was, I don't know if there still is, I don't know if the prosecutor intends to dismiss the case or intends to go forward with trial—
>
> * * *
>
> *THE COURT*: Okay. Now, today is the date set for trial; Mr. Correll, you're ready, willing, and able to proceed?
>
> *MR. CORRELL*: That is correct, your Honor.
>
> *THE COURT*: You've heard your client; I invited him to speak even though you are his spokesman, anything you wish to say concerning that, as to representation?
>
> *MR. CORRELL*: Your Honor, I've known [defendant] through the pendency of this case, I'll be glad to stand in, I'm familiar with the issues in this case. We have had a disagreement as to the—some of the legal issues involved,

---

[1] Officer Palazzolo also discovered "a small container of . . . suspected marijuana."

[2] There were conflicting reports and opinions as to defendant's competency to stand trial.

but I'd be glad to proceed on his behalf if the Court wishes me to do that and [defendant] wishes me to do that.

THE COURT: Okay. I'm just curious—I will speak to you directly since the request is to proceed on your own, I'm—why?

THE DEFENDANT: I hear—I'm not literally dumb, I spent 16 months day and night constantly studying the book of Michigan Compiled Laws.

THE COURT: No, here's my question,—

THE DEFENDANT: Why would I want to speak for myself, because I got an understanding—

THE COURT: Well, it's—

THE DEFENDANT: I didn't commit the crime of home invasion.

THE COURT: Is there a conflict between the two of you, or are you both on the same page on how to proceed, because if you both are on the same page—

THE DEFENDANT: He's a good attorney, I like him, but I feel that I want to put up my own argument because I got a better understanding of the books.

THE COURT: And you're ready to proceed today; even if I grant the motion, I'm not—I can't postpone it, they've already brought witnesses out here, you understand that and that's your desire?

THE DEFENDANT: (Indiscernible)—

\* \* \*

THE COURT: Yeah, that—is—I don't want to invade attorney-client privilege, but I am curious whether there is a breakdown between Mr. Correll, yourself, and your client as it pertains to anything in particular, i.e., advising your client of whether he should testify or not.

MR. CORRELL: The only thing with respect that I indicated to [defendant] about testifying . . . is that what he had indicated to me, and I'm not divulging attorney-client issues, what he wishes to testify to [is] his legal understanding of the charge, not the factual issues of the case.

Is that correct, [defendant]?

THE DEFENDANT: Yes, sir.

\* \* \*

*THE COURT*: Well, it's your advice, and if he elects not to accept that advice and proceeds to testify, if you are both otherwise in accord in how to proceed, then I'm curious why he wouldn't just have you represent him, he can accept your advice where he chooses to accept it and not accept it, i.e., with respect to testifying, and then he can testify.

*MR. CORRELL*: And your Honor, to be clear, I indicated to [defendant] downstairs that if he wished to testify, he could testify to anything that he wishes to.

*THE COURT*: If you elect to testify, even though it's contrary to Mr. Correll's advice, you certainly would be permitted, and any reason, then, not to have him represent you otherwise?

*THE DEFENDANT*: I just—I'd rather just, you know, what he just said.

*THE COURT*: Well, okay.  Well, he's either in or he's out.

*THE DEFENDANT*: Well, I mean I really like him as an attorney, but I kind of—I kind—I'm saying I'll—but I mean there's no offense towards him at all, he's a good attorney, believe me he's a good attorney, it's just that he—

*THE COURT*: Okay.

*THE DEFENDANT*: —he's got a million things on his desk, he can't put everything like I did, I put everything into it, I'm positive it's not home invasion. I'm not lying about it, I admit to everything they said I did, it's considered a misdemeanor according to the book of Michigan laws.

*THE COURT*: You choose to represent yourself?

*THE DEFENDANT*: Yes.

*THE COURT*: Mr. Correll, I will accept your client's request, but I will retain your services if you would be willing to sit next to him.

*MR. CORRELL*: I will.

*THE COURT*: And we'll see what, if any, services, will be needed from you.

*MR. CORRELL*: That will be fine, your Honor.

*THE COURT*: Okay.  All right.  Very well.

* * *

*THE COURT*: [Defendant], you're reminded that you're still under oath, required to testify truthfully and honestly, okay?

*THE DEFENDANT*: Yes, sir.

*THE COURT*: You understand you have a constitutional right to have a lawyer represent you?

*THE DEFENDANT*: Yes, sir.

*THE COURT*: And that right includes trial, and if you were convicted at trial, for sentencing and appeal, and if you could not appoint [sic] an attorney, I'd appoint one for you, do you understand that?

*THE DEFENDANT*: Oh, yes; yes, sir.

*THE COURT*: You have a constitutional right to decline to have representation, and—

*THE DEFENDANT*: Yes, sir.

*THE COURT*: —you have the absolute right; and you wish to exercise that right and decline constitutional representation?

*THE DEFENDANT*: Yes, sir.

*THE COURT*: Do you have any questions?

*THE DEFENDANT*: No, sir.

The trial court then proceeded with the bench trial, during which defendant, himself, cross-examined witnesses and made his own opening statement and closing argument. Defendant presented no evidence and only twice consulted his standby counsel, who—like defendant—offered not a single objection. Defendant's claim during closing argument was that the felony home invasion charge was improper; instead the charge of misdemeanor breaking and entering[3] was appropriate. The trial court ultimately found defendant guilty of both home invasion and marihuana possession, and this appeal ensued.

### III. ANALYSIS

Defendant first argues that because the trial court failed to substantially comply with the requirements of *Anderson*, 398 Mich 361, and MCR 6.005(D)(1), it committed structural error requiring automatic reversal. Defendant is correct. Although defendant did not raise this issue below, we may consider it for the first time on appeal because of its potentially outcome determinative nature.[4] *People v Grant*, 445 Mich 535, 547; 520 NW2d 123 (1994) ("appellate

---

[3] See MCL 750.115.

[4] Our Supreme Court has suggested that ineffective waiver of counsel claims are not subject to the usual preservation requirements. *People v Vaughn*, 491 Mich 642, 657; 821 NW2d 288

courts will consider claims of constitutional error for the first time on appeal when the alleged error could have been decisive of the outcome"); *People v Dennany*, 445 Mich 412, 439; 519 NW2d 128 (1994) (the ineffective waiver of a defendant's right to counsel may constitute error requiring reversal).

"The right of self-representation under Michigan law is secured by Const 1963, art 1, § 13 and by statute, MCL 763.1." *People v Williams*, 470 Mich 634, 642-643; 683 NW2d 597 (2004). Before granting a defendant's waiver request a court must make three findings: (1) "the waiver request must be unequivocal", (2) "the trial court must be satisfied that the waiver is knowingly, intelligently, and voluntarily made", and (3) "the trial court must be satisfied that the defendant will not disrupt, unduly inconvenience, and burden the court or the administration of court business." *Id.*, citing *Anderson*, 398 Mich at 367-368. Regarding the second factor, the trial court must inform the defendant of the potential risks of self-representation "so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Anderson*, 398 Mich at 368. Additionally, MCR 6.005(D), in which these procedures are codified, specifically requires a court to do two things before granting a defendant's waiver request:

(1) advis[e] the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offer[] the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Satisfaction of these requirements does not necessitate formalistic compliance, nor does it require a "word-for-word litany approach." *People v Adkins (After Remand)*, 452 Mich 702, 721, 726-727; 551 NW2d 106 (1996), overruled in part on other grounds by *Williams*, 470 Mich at 641 n 7. Instead, it should banish any uncertainty regarding whether the waiver procedures have been met. *People v Russell*, 471 Mich 182, 191; 684 NW2d 745 (2004), citing *Adkins*, 452 Mich at 721. Substantial compliance is all that is needed in this respect, and achieving it is straightforward. *Russell*, 471 Mich 182 at 191, citing *Adkins*, 452 Mich at 721. In short, it requires a trial court to briefly discuss with a defendant the substance of *Anderson* and MCR 6.005(D) and expressly find that defendant "fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Russell*, 471 Mich at 191 (citation omitted). Absent substantial compliance with the requirements of *Anderson* and MCR 6.005(D), a defendant's waiver is ineffective. *Russell*, 471 Mich at 191-192.

(2012). However, at issue in *Vaughn* was whether defendant preserved his right to a public trial. *Vaughn's* statements regarding ineffective waiver of counsel claims are therefore *obiter dictum*, which lack the force of an adjudication. *Liberty Mut Ins Co v Mich Catastrophic Claims Ass'n*, 248 Mich App 35, 44; 638 NW2d 155 (2001) ("Discussion of a principle of law not essential to the determination of a case is obiter dictum and is without the force of an adjudication") (citation and quotation marks omitted). Regardless, because we conclude that review of defendant's claim is appropriate under the circumstances of this case, we need not determine whether the preservation requirements exist for claims of ineffective waiver of counsel.

-6-

In this case, there is no question that defendant's request to represent himself was unequivocal. Indeed, defendant clearly articulated his position at length both before and at the start of trial. Accordingly, the first requirement of *Anderson* was met.

Unfortunately, whether the trial court satisfied the second requirement is just as clear. Indeed, although defendant repeatedly asserted his knowledge of the home invasion charge because he "spent 16 months day and night constantly studying the book of Michigan Compiled Laws," the *only* advice to defendant on record concerning the nature of the charge and sentence came from defense counsel. Not once throughout the course of these proceedings did the trial court personally inform defendant of "the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation." MCR 6.005(D)(1). Accordingly, there was no substantial compliance.

In reaching this conclusion, we are mindful that defendant had at least some idea (a very good idea in his own estimation) regarding the charges against him and the potential sentences he faced. Likewise we recognize that substantial compliance is meant to be "a practical, salutary tool to be used to avoid rewarding gamesmanship as well as to avoid the creation of appellate parachutes." *Russell*, 471 Mich at 192. But absent even a perfunctory nod by the trial court to the unambiguous requirements of the court rule, we cannot see minimal, let alone substantial compliance. And while we are loathe to permit a criminal defendant with eyes apparently open to cry foul about the very issue he vehemently argued to the contrary below, "the most effective way for a trial court to safeguard against the opening of an appellate parachute is to comply with the court rules and *Anderson*." *People v Dennany*, 445 Mich 412, 438; 519 NW2d 128 (1994) (opinion by GRIFFIN, J.). It is this failure that compels our decision today.

The prosecution counters that defendant was clearly aware of the charges and potential sentences given his execution of the arraignment waiver form, receipt of the information, his affirmance that he understood the substance of the charges, and the filing of the habitual information which listed defendant's maximum sentence. However, had defendant been advised of this information *by the trial court* rather than just those documents, this argument would be more persuasive. See *Adkins*, 452 Mich at 731 (concluding there was substantial compliance where at the arraignment the trial court advised defendant of the seriousness of the case, the potential hazards inherent in self-representation, and the nature of the charges and sentences). But the prosecution cites no authority—and we have found none—suggesting that a defendant's receipt of routine court documents ensures *the trial court*'s substantial compliance with MCR 6.005(D)(1). This is not surprising, for if the receipt of such documents alone were sufficient to establish substantial compliance, it is difficult to conceive of any case in which substantial compliance would not occur automatically. Accordingly, we conclude the trial court erred by failing to substantially comply with the requirement that defendant provide a knowing, intelligent, and voluntary waiver.

Harmless error analysis cannot rescue this failure. The crux of the prosecution's claim in this regard is that any error was not structural because defendant's standby counsel was "exceedingly active," thereby rendering him the functional equivalent of co-counsel or hybrid counsel. In support, the prosecution relies on this Court's opinion in *People v Willing*, 267 Mich App 208, 224; 704 NW2d 472 (2005), as well as several cases from foreign jurisdictions. None is helpful.

First, while the *Willing* Court stated that the harmless error doctrine can be applied in certain situations involving an ineffective waiver of counsel claim, the Court expressly rejected the argument that standby counsel equals the assistance of counsel. *Id*. at 227-228. As *Willing* explained:

> "Given the limited role that a standby attorney plays, we think it clear that the assistance of standby counsel, no matter how useful to the court or the defendant, cannot qualify as the assistance of counsel required by the Sixth Amendment. The very definition of full-fledged counsel includes the proposition that the counselor, not the accused, bears the responsibility for the defense; by contrast, the key limitation on standby counsel is that such counsel *not be responsible*—and not perceived to be responsible—for the accused's defense. . . .
>
> . . . The defendant preserves actual control over the case he presents to the jury; standby counsel cannot substantially interfere with any significant tactical decisions, cannot control the questioning of witnesses, and cannot speak in place of the defendant on any matter of importance. . . . [T]his Court holds that standby counsel is not 'counsel' within the meaning of the Sixth Amendment." [*Id*., quoting *United States v Taylor*, 933 F2d 307, 312-313 (CA 5, 1991) (second ellipsis in original, other citations omitted).]

The prosecution's reliance on foreign cases is likewise unavailing. In those cases, the standby/hybrid counsel variously "examined and cross-examined a number of the witnesses, participated actively in the instructions conference, raised issues and objections, and even gave a closing argument" as in *United States v Oreye*, 263 F3d 669, 672-673 (CA 7, 2001); represented the defendant for most of trial, and even "conducted the rather extensive and detailed direct examination of [the defendant]; made objections during the government's rebuttal case; and gave the closing argument for the defense," as in *McClinton v United States*, 817 A2d 844 (DC App, 2003); or "objected to leading during the direct examination," "examined [the defendant] on the stand" and "presented the closing argument," as in *Hearn v State*, 3 So 3d 722, 734-745 (Miss, 2008).

In contrast, here, although defendant consulted with standby counsel during trial, defendant declined to permit standby counsel to conduct closing argument, and standby counsel neither raised any objection nor questioned any witness. Perhaps most importantly, defendant represented himself for the entire trial, not just a portion. This quite simply is not a situation of standby counsel acting in the capacity of co-counsel or hybrid counsel.

Ultimately, then, defendant's lack of functional counsel coupled with his constitutionally infirm waiver of that right means his deprivation of counsel at trial was total or complete. This is structural error and it requires reversal, without regard to defendant's apparent knowledge of the charges against him and the potential sentences. See *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000) ("If the error is structural, reversal is automatic. If the constitutional error is not structural, it is subject to the harmless beyond a reasonable doubt test") (citations omitted); *People v Buie (On Remand)*, 298 Mich App 50, 61-62; 825 NW 2d 361 (2012), quoting *Willing*, 267 Mich App at 224 (2005) ("It is well established that a total or complete deprivation of the right to counsel at a critical stage of a criminal proceeding is a structural error requiring

automatic reversal."). We must therefore vacate defendant's conviction and remand this case for a new trial.[5]

### IV. CONCLUSION

Because the trial court failed to substantially comply with the second requirement of *Anderson* and with MCR 6.005(D)(1), we conclude there was structural error defying harmless error analysis and requiring reversal. Accordingly, we vacate defendant's convictions and remand for a new trial.

We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Kirsten Frank Kelly

---

[5] Because our conclusion is dispositive, the issues raised in defendant's Standard 4 brief as well as the issue of whether the court failed to order sua sponte a competency review before trial are moot.