In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2211

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TYRON OFFUTT,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:21-cr-30029 — **Stephen P. McGlynn**, *Judge.*

ARGUED SEPTEMBER 12, 2024 — DECIDED NOVEMBER 25, 2024

Before HAMILTON, SCUDDER, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* A jury convicted Tyron Offutt of drug
and firearm offenses, and he was sentenced to 300 months'
imprisonment, followed by four years of supervised release.
On appeal, Offutt challenges both his conviction and his sen-
tence. He asserts that he is entitled to a new trial because the
district court erroneously instructed  the  jury that his flight
from law enforcement could be considered as evidence of his
consciousness of  guilt. Offutt also argues that the district

court violated his Sixth Amendment right to counsel by denying his request for counsel at sentencing. Because the flight instruction did not impact the outcome of the trial and Offutt constructively waived his right to counsel, we affirm.

## I. BACKGROUND

### A. Factual Background

In late-2020, the FBI began investigating Offutt after a confidential informant told law enforcement that Offutt was trafficking narcotics in Centralia, Illinois. Under the FBI's direction, the confidential informant conducted three controlled purchases of methamphetamine from Offutt at his home on December 17 and 22, 2020, and on January 21, 2021. The FBI equipped the confidential informant with audio and video equipment to record all three purchases.

Based on these controlled buys, investigators obtained a search warrant for Offutt's residence and executed the warrant on February 3, 2021. Immediately prior to executing the search warrant, law enforcement officers observed Offutt exit his residence, enter his vehicle, and drive away.

Offutt had driven only a short distance when the Centralia Police Department attempted a traffic stop. Prompted by the officer, Offutt pulled over and stopped his car, but when the officer approached Offutt's car on foot and ordered him to show his hands, Offutt displayed one hand and sped away. This led the police to engage in a high-speed chase that ended several blocks later, when Offutt stopped at his mother's house.

Meanwhile, FBI agents and task force officers searched Offutt's residence and found approximately one ounce of

methamphetamine, two loaded firearms, marijuana, large sums of United States currency, and drug-trafficking paraphernalia.

### B. Procedural History

To understand Offutt's arguments on appeal, we must review the procedural history below.

#### 1. Pre-Trial

After the government filed a criminal complaint against Offutt on February 4, 2021, the district court appointed Dan Cronin to serve as Offutt's attorney. A grand jury subsequently returned a three-count indictment on February 24, 2021, and Offutt was arraigned and released on bond.

Cronin requested leave to withdraw as Offutt's counsel in September 2021, citing a conflict of interest that had developed between his office and Offutt, as well as an apparent breakdown in communication with Offutt. The district court granted the motion and, on September 17, 2021, appointed Rebecca J. Grosser to replace Cronin as Offutt's counsel.

A few days later, a grand jury returned a four-count superseding indictment, charging Offutt with one count of possession with intent to distribute five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) on February 3, 2021 (Count 1); one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 2); and two counts of distribution of five grams or more of methamphetamine in violation of 21 U.S.C.

§ 841(a)(1) and (b)(1)(B)(viii) during the December 22, 2020, and January 21, 2021, controlled buys (Counts 3 & 4).[1]

On November 3, 2021, Offutt filed a *pro se* motion seeking new counsel, claiming that Grosser was not answering his phone calls. The district court struck the motion and advised Offutt that all pleadings must be filed by his attorney, rather than Offutt himself.

The case proceeded, and on February 28, 2022, Grosser filed a motion to modify Offutt's bond conditions (the third such motion), which the district court granted. Shortly thereafter, a pretrial services officer notified Grosser and the government that Offutt had stated his intention to privately retain Paul Storment as his attorney. Because the trial date was fast approaching, the government requested a conference with the court to clarify the status of Offutt's legal representation.

The district court addressed this issue at a final pretrial hearing on March 14, 2022. During an *ex parte* exchange, Offutt advised the court that he had no qualms with Grosser's representation, but had developed a positive relationship with Storment in a prior case. The district court then warned Offutt that the upcoming trial was a serious one and that the penalties he could face were significant. The court also observed that if Offutt had wanted to hire Storment, he had ample time to do so following Cronin's withdrawal six months before. Nonetheless, the district court granted Offutt's request and gave him four days to retain Storment.

---

[1] Count 3 originally charged Offutt with distribution of fifty grams or more of methamphetamine, but the government orally moved to amend Count 3 on the first day of trial to charge Offutt with distribution of five grams or more of methamphetamine. That request was granted.

The conference then shifted to the parties' pretrial motions, at which point Grosser mentioned that she and Offutt disagreed about a potential motion to suppress. In response, the district court reminded Offutt that the decision to file a motion to suppress was a strategic one that his attorney should make.

Despite obtaining permission to retain Storment, Offutt never did so, and Grosser continued to represent him. As the case proceeded, she moved to suppress physical evidence related to the search of Offutt's residence and later requested a competency evaluation. At the August 31, 2022, competency hearing, however, Grosser informed the court that Offutt wished to dismiss her as counsel, although she was prepared to continue representing him through trial.

The court solicited Offutt's views, and Offutt asserted again that Grosser was not returning his calls. At this, the court reminded Offutt that it had given him the chance to hire Storment, but that Offutt had not done so. The court also cautioned Offutt that, although he had the right to court-appointed counsel, he did not have the right to an attorney of his choosing. After considering the evidence at the hearing, the district court found Offutt competent to stand trial.

A month later, Grosser filed a motion to withdraw as counsel, stating that an "unwaivable conflict of interest [had] developed" with Offutt that prevented her from representing him. Five days later and less than a month before the scheduled trial date of October 5, the court held a hearing on Grosser's motion.

At the hearing, Offutt again told the court *ex parte* that he was having trouble reaching Grosser on the phone. Offutt also

said that he had tried to hire private counsel but found it cost-prohibitive. And so, he requested that the court appoint him a different attorney. Despite noting its suspicion that Offutt was just trying to delay the trial, the court granted his wish for a new attorney. But the court warned Offutt that if his only purpose was to delay the trial, the court may have to revoke his bond and detain him. The court also made clear that the next court-appointed attorney would be Offutt's last, and if Offutt could not work with him, he would have to proceed *pro se* or retain private counsel.

The court then appointed a third lawyer, Bobby Edward Bailey, to represent Offutt. Even so, Offutt contacted court reporters for hearing transcripts and appeared in the Clerk's Office alone on multiple occasions. After learning of this, the district court again ordered Offutt to relay any requests to his attorney.

## 2. Trial

Offutt's jury trial commenced on December 6, 2022, and Bailey represented him throughout the three-day proceedings. On the second day, the court held a jury instruction conference, at which time Bailey objected to the government's proposed flight instruction:

**THE COURT:** Flight to avoid prosecution.

**BAILEY:** I'm going to have an objection, Your Honor. No evidence to support that Mr. Offutt fled from the police.

**THE COURT:** There was a little evidence. We also talked about the fact that Mr. Offutt was pulled over. He initially stopped, then he took off with a high-speed chase, which ultimately ended at his mother's home so

that the—Officer Herzing did not pursue the defendant, but proceeded to execute the warrant. So I'll give it if you want it given.

**THE GOVERNMENT:** Please, Your Honor.

**THE COURT:** All right. Over objection, it will be given.[2]

After deliberations, the jury found Offutt guilty of Counts 2, 3, and 4 of the superseding indictment. But it failed to reach a unanimous verdict on Count 1, which charged Offutt with possession with intent to distribute methamphetamine on the day of the search.

### 3. Sentencing

As the case proceeded to sentencing, Offutt filed two *pro se* letters expressing his dissatisfaction with Bailey. In turn, Bailey filed a motion to withdraw on April 10, 2023, citing a complete breakdown of his relationship with Offutt.

The court held a hearing on the motion and reminded Offutt that Bailey was the final attorney that it would appoint for him. The district court remarked, "Every attorney that has represented you in this case—and there have been some fine attorneys that have represented you in this case—have found it impossible to work with you and now you want to get rid of yet another attorney." In response, Offutt repeated that he wanted to retain Storment. The district court then told Offutt that, if he insisted on it, it would give him an opportunity to do so and allow Bailey to withdraw. But the court warned

---

[2] The instruction is quoted in its entirety in Section II.A, *infra*.

Offutt again that it would not appoint anyone else to represent him:

> You'll be given twenty-one days to hire an attorney on your own. You can get private counsel. If you don't want to do that then you will have the availability [sic] to review the presentence investigation report, file any objections to it that you want, but I'll set this for a new sentencing hearing, but you will be here either with new counsel that you've hired and paid for or you'll be moving *pro se*.

The court then gave Offutt another opportunity to confer with Bailey before making his final decision. The court also described to Offutt what he or his counsel would need to do at the sentencing hearing:

> Now, the only thing that is left is to make argument for you and maybe call witnesses, file any objections to the pretrial sentencing report that might be appropriate, and then you're given an explanation of your rights on appeal. Do you want time to think about it? What do you want to do?

Offutt responded:

> **OFFUTT:** So you said twenty-one days to find a new attorney?
>
> **THE COURT:** Yep.
>
> **OFFUTT:** I can try to do that, try to get time to find a new attorney.
>
> **THE COURT:** Even if you're not able to find a new attorney, you prefer to go to the sentencing hearing

acting as your own attorney as opposed to having Mr. Bailey serve you?

**OFFUTT:** No. I'll try to get an attorney to help me with the sentence. I had a question about the guidelines and some stuff I've seen in the presentence report, some stuff I don't understand. I was trying to get clarification and try to go about like the career offender part. A few things I need an attorney to help explain to me.

After this exchange, the court brought the government back into the courtroom and explained that it would allow Bailey to withdraw as Offutt's attorney and provide Offutt twenty-one days to secure private counsel. If he was unable to do so, the court repeated, Offutt would have to proceed *pro se*. And, to ensure that Offutt understood the consequences of his decision, the court reiterated that it would not appoint another attorney for him.

The district court then reviewed the tasks that awaited Offutt if he proceeded to sentencing *pro se*. He would have to submit objections to the presentence investigative report and argue them to the court. He would have the opportunity to call witnesses to testify as to his character and submit letters of reference. And he would have the right to allocute. Finally, the court invited Offutt to file any questions or papers with the court and ordered him to provide an update on his efforts to retain private counsel by May 17, 2023.

One week before the May 17 deadline, Offutt filed a *pro se* motion noting his inability to secure counsel and requesting appointment of another attorney. In the section of the standard motion form that stated, "I believe I am not able to represent myself because," Offutt checked the box, "Other," and,

next to it, wrote, "mental health, anxiety, PTSD, and had suffered a stroke about a year and a half ago." The district court denied Offutt's motion, declaring once again that Offutt should retain counsel or proceed *pro se* at the sentencing hearing, which the court set for June 6, 2023.

Less than one week before the sentencing hearing, Offutt filed another letter explaining that he could not afford an attorney and was unable to hire one. Offutt also stated that he could not represent himself due to his anxiety, high blood pressure, and a previous stroke.

Immediately prior to the sentencing hearing, Offutt filed another motion—this time, a motion to suppress—and appeared at the hearing unaccompanied by counsel. The district court started the sentencing hearing by addressing Offutt's renewed request for an attorney:

> I told you then on April the 24th of 2023 that I would not appoint further counsel, that you could hire counsel. You talked previously about hiring Attorney Paul Storment. I gave you time to find private counsel, but I told you you would proceed *pro se*. And I'm going to stick by that.

As for Offutt's claim that he was unable to represent himself, the court observed:

> [W]hile you do have a documented history of some underlying mental health issues, you show a remarkable understanding of the case against you and you yourself have drafted pleadings, including this most recent motion to suppress that is very cogent, makes a lot of sense. … The arguments are presented persuasively. It's well drafted, particularly from a *pro se* litigant. The

> supporting evidence that you filed with it is cogent and very relevant to support the arguments that you were making. … The relevance of [sic] is that is [sic] it shows you are fit to advance arguments on your own behalf, so I'm not inclined to appoint new counsel for you.

The district court also reiterated its view that Offutt's purpose was to delay the proceedings to forestall imprisonment, noted that a defendant could waive his right to counsel by his conduct, and denied Offutt's request. With that, the district court proceeded to sentencing, discussed Offutt's objections to the presentence investigative report, calculated the guideline range, listened to Offutt's allocution and the parties' arguments, discussed the sentencing factors under 18 U.S.C. § 3553(a), and sentenced Offutt to a within-guidelines sentence.

## II. DISCUSSION

### A. Flight Instruction

We begin with Offutt's challenge to the flight instruction. On appeal, Offutt argues that the district court failed to conduct the analysis required by *United States v. Jackson*, where we explained that "the probative value of flight as circumstantial evidence of guilt depends on the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." 572 F.2d 636, 639 (7th Cir. 1978).

A district court's decision to give or refuse to give a jury instruction is typically reviewed for an abuse of discretion.

*United States v. Hidalgo-Sanchez*, 29 F.4th 915, 929 (7th Cir. 2022) (citing *United States v. Campos*, 541 F.3d 735, 744 (7th Cir. 2008)). The problem is that Offutt's objection to the flight in-struction at trial was premised on the theory that there was no evidence that he had fled from the police in the first place—an argument that differs substantially from the one he advances now. As a result, Offutt forfeited the argument that the district court failed to consider the *Jackson* factors, and we apply plain error review. Fed. R. Crim. P. 30(d). *See United States v. Campbell*, 770 F.3d 556, 568, 570–71 (7th Cir. 2014); *United States v. Ye*, 588 F.3d 411, 414 (7th Cir. 2009).

Under the plain error framework, we reverse only when there is "(1) error (2) that is plain, and (3) that affects the de-fendant's substantial rights." *United States v. McClellan*, 794 F.3d 743, 754 (7th Cir. 2015); *see Puckett v. United States*, 556 U.S. 129, 135 (2009). And, to establish that the error in ques-tion affected his substantial rights, a defendant "must demon-strate that it affected the outcome of the district court proceed-ings." *United States v. Lawson*, 810 F.3d 1032, 1040 (7th Cir. 2016) (cleaned up).

Furthermore, if the defendant satisfies all three elements, the decision to remedy the error "is left within the discretion of the court of appeals, and we 'should not exercise that dis-cretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Campbell*, 770 F.3d at 568 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "Our plain error review is particularly light-handed in the context of jury instructions." *United States v. Griffin*, 84 F.3d 912, 925 (7th Cir. 1996).

The district court instructed the jury as follows:

You have heard testimony that a crime was supposed to have been committed, and that the defendant fled from law enforcement. If you believe that the defendant fled, then you may consider this conduct along with all the other evidence in deciding whether the government has proved beyond a reasonable doubt that he committed the crime charged. The conduct may indicate that he thought he was guilty and was trying to avoid punishment. On the other hand, sometimes an innocent person may flee for some other reason. The defendant has no obligation to prove that he had an innocent reason for his conduct.

As Offutt correctly points out, we previously have discouraged the use of flight instructions, observing that "[t]he Supreme Court itself has 'consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime.'" *United States v. Russell*, 662 F.3d 831, 850 (7th Cir. 2011) (quoting *Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963)). That said, it is undisputed that the instruction the court gave is an accurate statement of the law, and we have countenanced similar instructions in the past when the facts supported it. *See, e.g.*, *United States v. Skoczen*, 405 F.3d 537, 549 (7th Cir. 2005) (finding no reversible error in a flight instruction that allowed the jury to consider flight evidence but warned the jury of the limits of such evidence, explaining that "[a] jury instruction will not be disturbed on appeal if the instruction fairly and accurately summarizes the law and has support in the record"); *United States v. Hunter*, 145 F.3d 946, 951 (7th Cir. 1998) (noting that the instruction "rests on a belief that a defendant would not have

run from the police unless he knew he had done something wrong (and, thus, something to fear from capture by the police)").

"Because the probative value of flight evidence is often slight," however, and "there is danger that a flight instruction will isolate and give undue weight to such evidence," *United States v. Williams*, 33 F.3d 876, 879 (7th Cir. 1994), we took pains to explain in *Jackson* the four inferential steps discussed above that would support such an instruction. *See* 572 F.2d at 639.

Here, we agree with Offutt that the inferential steps between his flight from police during the traffic stop, his consciousness of guilt generally, and his consciousness of guilt concerning the offenses charged are tenuous at best. There was no evidence that Offutt fled out of guilt over the two controlled buys that had occurred weeks earlier (the only drug counts for which he was convicted). *See Russell*, 662 F.3d at 851 (explaining that "the chronology of events, and in particular the passage of time between the commission of a crime or the defendant being accused of a crime and his purported flight, is a material consideration in our assessment of … the propriety of a flight instruction"). Nor is there any evidence that Offutt had knowledge about the ongoing investigation or the imminent search of his home that would have caused him to flee his house. That Offutt only went a few blocks to his mother's house after fleeing the traffic stop further undermines the theory that Offutt fled from the police to avoid arrest for the controlled buys or the drugs and guns found in his house.

Accordingly, on this record, we believe that the district court erred when providing the flight instruction to the jury.

That said, because the record demonstrates that Offutt would have been convicted of Counts 2, 3, and 4, even in the absence of the flight instruction, the district court's decision to give the instruction survives plain error review. *See Olano*, 507 U.S. at 732.

Starting with Count 2, the jury heard undisputed testimony that two loaded firearms were seized from Offutt's bedroom during the execution of the search warrant. The government also presented certified records of Offutt's prior felony convictions as well as uncontested testimony about them. And Offutt did not argue at trial that he was unaware of his felony status. On these facts, the flight instruction was harmless.

Counts 3 and 4 charged Offutt with distribution of methamphetamine during the controlled buys on December 22, 2020, and January 21, 2021, respectively. The confidential informant testified that she had purchased methamphetamine from Offutt on those dates. The jury also heard audio and watched video recordings of both controlled buys. Moreover, the government introduced evidence that the search of Offutt's house uncovered drugs that looked identical to the drugs depicted in video recordings of the controlled buys. Again, the evidence was overwhelming, and we do not believe that the outcome would have been any different in the flight instruction's absence.

Furthermore, there is no indication that the jury assigned an oversized value to the evidence of Offutt's flight in this case. First, the instruction "warned the jury about the limits of [flight] evidence" and explained that sometimes an innocent person may flee for some other reason than guilt. *Skoczen*, 405 F.3d at 549. What is more, had the flight instruction

caused the jury to place undue reliance on Offutt's flight as opposed to the overwhelming evidence of drugs, one would expect the jury to have convicted Offutt of Count 1 (possessing with intent to distribute methamphetamine on the day of the search) as well. It did not.

Under these circumstances, the district court's granting of the flight instruction caused no prejudice to Offutt and, thus, fell well short of seriously affecting the fairness, integrity, or public reputation of judicial proceedings. Nevertheless, we take this occasion to again warn district courts of the perils of giving a flight instruction, particularly in cases like this one where "the strong case the government presented … makes it clear the flight instruction was entirely unnecessary." *Williams*, 33 F.3d at 879.

## B. Appointment of Counsel

Next, Offutt contends that the district court violated his Sixth Amendment rights by refusing to appoint him counsel for his sentencing hearing. The Sixth Amendment guarantees a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *Faretta v. California*, 422 U.S. 806, 807 (1975). At the same time, the Sixth Amendment has "been understood as a personal right to decide how to defend oneself," *Tatum v. Foster*, 847 F.3d 459, 460 (7th Cir. 2017), and a defendant's right to self-representation is "necessarily implied by the structure of the Amendment[,]" *Faretta*, 422 U.S. at 819.

Thus, the Sixth Amendment protects a defendant's right to self-representation, so long as the defendant makes the choice to forgo counsel knowingly and voluntarily. *See id.* at 835; *United States v. Volpentesta*, 727 F.3d 666, 676 (7th Cir.

2013). And a defendant may exercise the right to self-representation either by affirmatively waiving his right to counsel or by constructively waiving the right through "conduct evidencing a refusal to accept counsel's assistance and the limitations that accompany it." *United States v. Nichols*, 77 F.4th 490, 499 (7th Cir. 2023).

We review for clear error a district court's factual determination that a defendant refused to accept counsel's assistance. *Id.* at 500 (citing *United States v. Balsiger*, 910 F.3d 942, 951–52 (7th Cir. 2018)). We review *de novo* a district court's determination that such a refusal constitutes a knowing and voluntary waiver of a defendant's right to counsel. *Balsiger*, 910 F.3d at 952.

### 1. Offutt's Refusal

On this record, the district court's factual finding that Offutt refused to accept the assistance of appointed counsel was not clearly erroneous. Offutt refused to work with Cronin and later, Grosser, and the court patiently acceded to both requests. All the while, the court repeatedly reminded Offutt that, although he had the right to counsel, he did not have the right to court-appointed counsel of his choosing.

And when Offutt told the court that he wanted to retain his own attorney to replace his third appointed counsel, the court took pains to warn Offutt that, if he refused to work with Bailey and pursued this route, the court would not appoint him another attorney. Moreover, the court observed that, in its view, Offutt had no reason to complain about his appointed attorneys, all three of whom the court knew to be capable lawyers. In its view, Offutt was simply trying to delay the proceedings to forestall sentencing. *See United States v.*

*Oreye*, 263 F.3d 669, 671 (7th Cir. 2001) ("A defendant has no right to indefinite delays while he tries on new lawyers unless he has a reason for dissatisfaction with the old.").

When Offutt affirmed that he wanted to retain his own lawyer, the court granted the request and provided him with twenty-one days to do so. The court again made it clear to Offutt that if he was not able to retain counsel, he would have to proceed *pro se* at sentencing. *See Volpentesta*, 727 F.3d at 676 (explaining that "where a defendant repeatedly complains of his appointed counsel the district judge may give him an ultimatum to either work with his attorneys or represent himself"). Consequently, when Offutt appeared at the sentencing hearing absent retained counsel, it became evident that "he [had] exhausted his options." *Nichols*, 77 F.4th at 500.

In situations like this—when the district court tells a defendant that if he dismisses his appointed attorney and fails to retain another at his own expense, he will have to proceed *pro se*—we have acknowledged the common-sense notion that "[i]f you're given several options, and turn down all but one, you've selected the one you didn't turn down." *Oreye*, 263 F.3d at 670.[3]

Thus, "[e]ven indulging every reasonable presumption to the contrary," the district court did not err in its determination that Offutt refused the assistance of appointed counsel for the purposes of the sentencing hearing. *See Nichols*, 77

---

[3] Offutt attempts to distinguish *Oreye* because in that case, the defendant had standby counsel to assist him at trial. Although appointing standby counsel might have been the safer approach, it has nothing to do with Offutt's clear rejection of appointed counsel and his choice to represent himself.

F.4th at 500 (holding that the district court's finding that the defendant would not work with his appointed counsel was not clearly erroneous where, in part, "[m]ore than once, the district court acknowledged [the defendant's] desire to have a different lawyer appointed but reminded him that he was not entitled to one and that his only other option was to represent himself").

### 2. Knowing, Intelligent, and Voluntary Waiver

Having affirmed the district court's finding that Offutt refused assistance of counsel, we must assess *de novo* whether his refusal amounted to a knowing, intelligent, and voluntary waiver of his Sixth Amendment right. Four factors guide this analysis:

> (1) whether and to what extent the district court conducted a formal hearing into the defendant's decision to represent himself; (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation; (3) the background and experience of the defendant; and (4) the context of the defendant's decision to waive his right to counsel.

*United States v. Johnson*, 980 F.3d 570, 577 (7th Cir. 2020) (quoting *United States v. Cooper*, 591 F.3d 582, 587 (7th Cir. 2010)).

### a. Formal Hearing

Conceding that the district court did not conduct a formal hearing into Offutt's decision to represent himself, the government argues that this should not matter given the multiple exchanges between the district court and Offutt regarding Offutt's dissatisfaction with appointed counsel and the consequences of dismissing his third attorney. Indeed, although

holding a formal hearing is the preferred course, we have observed that a district court's failure to conduct one "is of little significance" when the record demonstrates that a defendant grasps the risks of proceeding *pro se* and chooses to do so. *Nichols*, 77 F.4th at 501; *see United States v. England*, 507 F.3d 581, 588 (7th Cir. 2007) ("A waiver is likely knowing and voluntary if the defendant gave it for strategic reasons or after repeatedly rejecting the assistance of counsel."). Accordingly, this factor does not help Offutt.

### b. Understanding of Risks

As the record demonstrates, Offutt elected to represent himself with "eyes open." *Faretta*, 422 U.S. at 835 (cleaned up). At multiple points throughout the case, Offutt acknowledged that he understood the potential pitfalls of proceeding *pro se*. The district court also warned Offutt on several occasions of the seriousness of the case and the substantial penalties he faced. What is more, Offutt's reliance on counsel at every stage of the proceedings through trial suggests that he was well aware of the benefits of having counsel.

Additionally, before Offutt confirmed his decision to dismiss Bailey, the district court explained to Offutt the tasks that he would have to undertake prior to and at the sentencing hearing. And Offutt himself acknowledged that he might need help with understanding the sentencing guidelines, the presentence report, and career offender implications. In the end, however, Offutt remained intractable, even if it meant that he would have to represent himself if he could not hire his own attorney. All told, Offutt's interactions with the court show that Offutt understood the risks of representing himself.

### c. Background and Experience

Offutt's background and experience further favor a finding that he knowingly, voluntarily, and intelligently waived his right to counsel. Considerations of a defendant's background and experience include "educational achievements, prior experience with the legal system (including prior *pro se* representation), and performance at trial in the case at bar." *United States v. Sandles*, 23 F.3d 1121, 1128 (7th Cir. 1994) (citation omitted). The record, including the appellate briefs, attached appendices, presentence report, and trial transcripts, reveals that Offutt had substantial experience with the legal system, having been convicted of multiple felonies and misdemeanors. Such acquaintance with the criminal justice system weighs in favor of finding a knowing, voluntary, and intelligent waiver. *See United States v. Egwaoje*, 335 F.3d 579, 586 (7th Cir. 2003) ("[A] defendant's criminal history militates in favor of waiver not only because we would expect that a criminally accomplished accused would possess some familiarity with courtroom procedures; it also bears upon the defendant's understanding of the risks involved and the nature of the charges brought against him.").

In addition, Offutt possessed a general education diploma and owned his own company selling sports memorabilia online. Offutt points to his below-average IQ, but the district court observed at the sentencing hearing that Offutt displayed a remarkable understanding of the case despite his documented history of mental health challenges. The court also took note of Offutt's cogent and well-drafted pleadings and letters. These factual findings made by the district court "[s]itting ringside" for over two years as the case unfolded deserve substantial weight. *Balsiger*, 910 F.3d at 952.

### d. Context

Context, the final factor, amply demonstrates that Offutt's choice to proceed to his sentencing *pro se* was knowing and voluntary. The court gave great leeway to Offutt in appointing three attorneys and allowing him to retain another of his choosing. In the end, it was Offutt who made the decision to retain private counsel or go it alone. Offutt claims that the court's refusal to appoint a fourth attorney was motivated by its trial schedule and the government's vacation plans. But a district court is entitled to enforce a preset schedule, *see Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006), and Offutt's supposition that the court's decision was premised on opposing counsel's vacation finds no support in the record.

Offutt also urges us to consider the district court's threat to detain him at the October 5, 2022 hearing. The purpose of the warning, however, was not to deter Offutt from obtaining new counsel or representing himself, but to inform him of the consequences should the court find that he was intentionally delaying the proceedings by raising unfounded requests for new counsel.[4]

In sum, although the district court did not conduct a formal inquiry into Offutt's decision, we have little trouble concluding on this record that Offutt constructively waived his right to the assistance of counsel for the purposes of his

---

[4] Notably, the court did find that Offutt's requests were merely pretexts for delay, but nevertheless gave him great latitude in replacing counsel.

sentencing hearing and that this waiver was knowing, intelligent, and voluntary.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Offutt's conviction and sentence.